# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SUSANNA MIRKIN AND BORIS MIRKIN,

Individually and on Behalf of All Others
Similarly Situated,

Plaintiffs,

v.

VIRIDIAN ENERGY, INC.,

Defendant.

Case No.: 3:15-cv-01057 (SRU)

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

**WITTELS LAW, P.C.**
Steven L. Wittels
J. Burkett McInturff
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com

*Attorneys for Plaintiffs and the Class*

Dated: February 12, 2016

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   ARGUMENT .................................................................................................................... 2

    A.   Legal Standard and Factual Background ................................................................ 2

    B.   The Complaint More Than Adequately Pleads Violations of New York's
        Mandatory Variable Price Disclosure Statute – Count I ........................................ 4

        1.   Viridian's Marketing That Fails to Mention Its Variable Rates Clearly
            Violates N.Y. G.B.L. § 349-d(7) – There is No Injustice in Requiring
            Viridian to Make the Mandated Disclosures when It Advertises that
            Consumers Who Switch Will Save ................................................................. 6

        2.   The Marketing That Mentions Variable Rates and Viridian's Consumer
            Contract Violate N.Y. G.B.L. § 349-d(7) Because Viridian's "Disclosures"
            are Ambiguous, Inconspicuous, and in Some Cases Completely False ......... 12

        3.   The Court Should Find That the Content of Viridian's Disclosures Do
            Not Satisfy N.Y. G.B.L. § 349-d(7)'s Requirement That All Variable
            Charges Be Identified. ................................................................................... 23

    C.   The Complaint States a Claim that Viridian Engaged in Deceptive Conduct
        Declared Unlawful by N.Y. G.B.L. §§ 349-d(3) and 349 – Counts II-III ............ 25

        1.   Viridian's Misrepresentations and Omissions are Deceptive ........................ 26

        2.   Viridian's Representations About its Rates are Not Mere Puffery ................. 30

        3.   The Fine Print on Viridian's Affordable Energy Brochure and in its
            Contract Does Not Cure Viridian's Misrepresentations ................................ 34

        4.   Plaintiffs Properly Plead Cognizable Injuries ............................................... 36

    D.   Plaintiffs' Breach of Contract Cause of Action Should Proceed – Count IV ....... 38

    E.   Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and
        Fair Dealing – Count V ........................................................................................ 42

III.  CONCLUSION ............................................................................................................... 45

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144 (2002) .......................................................................................... 43

*Ackerman v. Coca–Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010)........................................................ 26, 27, 35

*Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO*,
    498 U.S. 517 (1991)............................................................................................... 9

*Altamirano v. Copiague Funding Corp.*,
    No. 06 Civ. 1751 (PCD), 2008 WL 3845362 (D. Conn. Aug. 18, 2008) ........................ 12, 23

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).......................................................................................... 2

*Aubin v. Residential Funding Co., LLC*,
    565 F. Supp. 2d 392 (D. Conn. 2008)................................................................... 23

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
    No. 08 Civ. 04397 (WHA), 2008 WL 6742224 (N.D. Cal. Dec. 18, 2008).......................... 33

*Avola v. Louisiana-Pac. Corp.*,
    No. 11 Civ. 4053, 2013 WL 4647535 (E.D.N.Y. Aug. 28, 201 ............................. 27

*Ballas v. Virgin Media, Inc.*,
    856 N.Y.S.2d 22 (Sup. Ct. 2007)......................................................................... 36

*Banks v. Consumer Home Mortg., Inc.*,
    No. 01 Civ. 8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003)......................... 8, 29

*Barnes v. Fleet Nat. Bank, N.A.*,
    370 F.3d 164 (1st Cir. 2004)................................................................................. 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. 2

*Burton v. Iyogi, Inc.*,
    No. 13 Civ. 6926 (DAB), 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ............................ 31

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*,
    930 F.2d 228 (2d Cir. 1991)................................................................................. 43, 45

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980).............................................................................................. 11

*Chase Manhattan Bank, N.A. v. Keystone Distributors Inc.*,
    873 F. Supp. 808 (S.D.N.Y 1994) ........................................................................ 44

*Claridge v. N. Am. Power & Gas, LLC*,
    No. 15 Civ. 1261 (PKC), 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015) ............. 28, 29, 35, 44

*Clement v. American Honda Finance Corp.*,
    145 F. Supp .2d 206 (D.Conn. 2001) .................................................................. 23

*Cole v. U.S. Capital*,
    389 F.3d 730 (7th Cir. 2004) .............................................................................. 20

*Coleman v. Kohl's Dep't Stores, Inc.*,
    2015 WL 5782352 (N.D. Cal. Oct. 5, 2015) ....................................................... 21

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .............................................................................. 33

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) ..................................................................................... 43, 45

*Daniyan v. Viridian Energy LLC*,
    No. 14 Civ. 2715 (GLR), 2015 WL 4031752 (D. Md. June 30, 2015) ................ 33

*Delgado v. Ocwen Loan Servicing, LLC*,
    No. 13 Civ. 4427 (NGG) (RML), 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ... 35

*E*Trade Financial Corp. v. Deutsche Bank AG*,
     05 Civ. 0902 (RWS), 2008 WL 2428225 (S.D.N.Y Jun. 13, 2008) ................... 44

*F.T.C. v. Amy Travel Serv.*, Inc.,
    875 F.2d 564 (7th Cir. 1989) .............................................................................. 28

*Fedorenko v. United States*,
    449 U.S. 490 (1981) ............................................................................................. 9

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................ 22

*FTC v. Sterling Drug, Inc.*,
    317 F.2d 669 (2d Cir. 1963) ............................................................................... 27

*Genesco Entm't v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) ..................................................................... 14

*Geron v. Robinson & Cole LLP*,
    476 B.R. 732 (S.D.N.Y. 2012) ............................................................................ 25

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    No. 13 Civ. 3073 (NSR), 2014 WL 1285137 (S.D.N.Y. Mar. 27, 2014) ............. 35

iii

*Grand ex rel. U.S. v. Northrop Corp.*,
  811 F. Supp. 333 (S.D. Ohio 1992) ................................................................ 9

*Grand Light & Supply Co. v. Honeywell, Inc.*,
  771 F.2d 672 (2d Cir. 1985).......................................................................... 10

*Great Br. Teddy Bear Co. v McNeil-PPC, Inc.*,
  No. 12 Civ. 3926, 2013 WL 1286148 (SDNY Mar. 29, 2013) ............................. 14

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996)............................................................................ 39

*Hembling v. Viridian Energy, Inc.*,
  No. 15 Civ. 01258 (SRU) ......................................................................... 40, 43

*In re Bank of Am. Corp. Sec., Derivatives, & ERISA Litig.*,
  757 F.Supp.2d 260 (S.D.N.Y. 2010)................................................................ 31

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013)........................................................................... 8

*In re Lehman Bros. Inc.*,
  No. 11 Civ. 6053 (KBF), 2012 WL 1995089 (S.D.N .Y. June 5, 2012) ................ 41

*In Re Litton Indus., Inc.*,
  97 F.T.C. 1 (1981)........................................................................................ 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................................... 29

*In re Vistaprint Corp Mktg. & Sales Practices Litig.*,
  No. 8 MD 1994 (NFA), 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ................ 22

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)............................................................. 32

*Int'l Dairy Foods Ass'n v. Amestoy*,
  92 F.3d 67 (2d Cir. 1996).............................................................................. 11

*Jacobson v. Sassower*,
  66 N.Y. 2d 991 (1985) .................................................................................. 41

*Jenkins v. Landmark Mortgage Corp. Of Am.*,
  696 F. Supp. 1089 (W.D.Va. 1988) ................................................................ 13

*Jenkins v. Landmark Mortgage Corp. of Virginia*,
  696 F. Supp. 1089 (W.D. Va. 1988) ............................................................... 23

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y. 3d 940, 941 (2012)........................................................................... 26

iv

*Kuklachev v. Gelfman*,
  600 F. Supp. 2d 437 (E.D.N.Y. 2009) ................................................................... 8

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  95 F. Supp. 3d 284 (D. Conn. 2015) ..................................................................... 35

*Lengel v. Equipe Sports, Ltd.*,
  738 A.2d 116 (Vt. 1999) .......................................................................................... 9

*Lewis v. Hertz Corp.*,
  181 A.D.2d 493, 494 (N.Y. App. Div. 1992) ......................................................... 36

*Lewis v. Thompson*,
  252 F.3d 567 (2d Cir. 2001) .................................................................................... 12

*Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*,
  631 F.3d 23 (2d Cir. 2010) ...................................................................................... 10

*Lonner v. Simon Prop. Grp., Inc.*,
  57 A.D.3d 100 (App. Div. 2d Dep't 2008) ............................................................ 37

*Lynch v. Tropicana Products, Inc.*,
  No. 11 Civ. 07382 (DMC), 2013 WL 2645050 (D.N.J. June 12, 2013) ................ 35

*Malta Town Ctr. I, Ltd. v. Town of Malta Bd. of Assessment Review*,
  3 N.Y.3d 563 (2004) ................................................................................................ 12

*Morrissey v. Nextel Partners, Inc.*,
  72 A.D.3d 209 (2010) .............................................................................................. 34

*Morrissey v. Nextel Partners, Inc.*,
  880 N.Y.S.2d 874 (Sup. Ct. 2009) .......................................................................... 36

*Murray Space Shoe Corp. v. FTC*,
  304 F.2d 270 (2d Cir. 1962) .................................................................................... 27

*Murray v. Sunrise Chevrolet, Inc.*,
  441 F. Supp. 2d 940 (N.D.Ill. 2006) ....................................................................... 20

*N.Y. Pub. Int. Res. Grp., Inc. v. Ins. Info. Inst.*,
  531 N.Y.S.2d 1002 (N.Y. Sup. Ct. 1988) ................................................................ 8

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
  272 F.3d 104 (2d Cir. 2001) .................................................................................... 11

*New York State Rest. Ass'n v. New York City Bd. of Health*,
  556 F.3d 114 (2d Cir. 2009) .................................................................................... 11

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .................................................................................... 31

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005)...................................................................................... 26

*Polonetsky v. Better Homes Depot, Inc.*,
   712 N.Y.S.2d 801 (N.Y. Sup. Ct. 2000) .............................................................. 29

*Quinn v. Walgreen Co.*
   2013 WL 4007568 (S.D.N.Y. Aug. 7, 2013)...................................................... 26

*Richards v. Direct Energy Servs., LLC*,
   No. 14 Civ. 1724 (VAB), 2015 WL 4644609 (D. Conn. Aug. 4, 2015) .............. 35

*Riley v. Brook*,
   No. 15 Civ. 00150 (CR), 2015 WL 7572308 (D. Vt. Nov. 24, 2015) .................... 9

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*,
   280 F.3d 384 (3d Cir. 2002)..................................................................................... 13

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ....................................................................... 21, 23

*Sanborn et al. v. Viridian Energy, Inc.*,
   No. 14 Civ. 01731 (SRU) ....................................................................................... 43

*Sands v. Ticketmaster-New York, Inc.*,
   207 A.D.2d 687 (N.Y. App. Div. 1994) .............................................................. 36

*Schwartz v. Goal Fin. LLC*,
   485 F. Supp. 2d 170 (E.D.N.Y. 2007) ............................................................. 14, 22

*Sec. & Exch. Comm'n v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972)................................................................................... 12

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)................................................................................................... 9

*Shields v. Lefta, Inc.*,
   888 F. Supp. 894 (N.D. Ill. 1995) ......................................................................... 13

*Silverman v. Motorola, Inc.*,
   No. 07 Civ. 4507 (JBM), 2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) .............. 32

*Sims v. First Consumers Nat. Bank*,
   303 A.D.2d 288 (1st Dep't 2003) .................................................................. 26, 32

*Slack v. Suburban Propane Partners, L.P.*,
   No. 10 Civ. 2548 (JLL), 2010 WL 3810870 (D.N.J. Sept. 21, 2010) .................... 33

*Smith v. Chapman*,
   614 F.2d 968 (5th Cir. 1980) ................................................................................ 13

*Smith v. Wells Fargo Bank, N.A.*,
   No. 15 Civ. 89 (SRU), 2016 WL 370697 (D. Conn. Jan. 29, 2016)...................................... 14

*Sorrells v. United States*,
   287 U.S. 435 (1932)......................................................................................... 10

*Spera v. Samsung Elecs. Am., Inc.*,
   No. 12 Civ. 05412 (WJM), 2014 WL 1334256 (D.N.J. Apr. 2, 2014).................................. 21

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
   No. 96 Civ. 5150, 1997 WL 137443 (S.D.N.Y. March 24, 1997)........................................ 14

*Steketee v. Viridian Energy, Inc.*,
   No. 15 Civ. 00585 (SRU) ................................................................................. 43

*Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*,
   2010 WL 3894576 (N.D. Ind. Sept. 27, 2010) ..................................................... 18

*United States v. Locascio*,
   357 F. Supp. 2d 536 (E.D.N.Y. 2004) ......................................................... 14, 20

*Urbino v. Ambit Energy Holdings, LLC*,
   No. 14 Civ. 5184 (MAS), 2015 WL 4510201 (D.N.J. July 24, 2015).................................. 33

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
   309 F. Supp. 2d 401 (E.D.N.Y. 2004) ................................................................ 32

*Victor v. Mammana*,
   101 Misc. 2d 954 (Sup. Ct. 1979)..................................................................... 20

*Virginia Bankshares v. Sandberg*,
   501 U.S. 1083 (1991)...................................................................................... 31

*Waldman v. New Chapter, Inc.*,
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) ............................................................... 37

*Wise v. Energy Plus Holdings LLC*,
   No. 11 Civ. 7345 (WHP) (S.D.N.Y. 2012)................................................... *passim*

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ............................................................... 26

*Yang Chen v. Hiko Energy, LLC*,
   No. 14 Civ. 1771 (VB), 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) ............... 4, 26, 36, 42

*Zahn v. N. Am. Power & Gas, LLC*,
   No. 14 Civ. 8370 (VMK), 2015 WL 2455125 (N.D. Ill. May 22, 2015) ............................. 41

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
   471 U.S. 626 (1985)....................................................................................... 12

**Statutes**

N.Y. G.B.L. § 349................................................................................................*passim*
N.Y. G.B.L. § 349-d(7)........................................................................................*passim*
N.Y. G.B.L. §349-d .............................................................................................*passim*

**Other Authorities**

FTC, Dot Com Disclosures...........................................................................15, 16, 18
FTC, Full Disclosure....................................................................................17, 17, 18

I.      **PRELIMINARY STATEMENT**

Defendant Viridian Energy, Inc., one of the new electricity suppliers called ESCOs (energy service companies) which has jumped into the deregulated energy market in New York, takes advantage of New York's consumers by deceptively using false promises of savings to lure consumers into switching to Viridian.  First Am. Class Action Compl. ¶ 2-4 ("FAC").  Once the switch is complete, Viridian charges consumers sky high rates.  As detailed in the Complaint, Viridian promises that consumers can purchase green energy that is less expensive than traditional "brown" energy and that its rates are competitive and reflect prevailing market conditions.  *Id*. ¶¶ 5-6.  But Viridian hides from consumers that its rates are not, in fact, lower than those of traditional utilities, nor are they competitive.  *Id*. ¶¶ 7, 46-48.  Not only are Viridian's rates as much as two or three times higher than the rates otherwise available in the market, but the representation that its rates reflect those in the market is belied by the fact that Viridian's rates rise or remain steady when market rates decline.  *Id*. ¶¶ 46-48.

Viridian's marketing violates New York's newly-enacted mandatory ESCO disclosure statute (the "ESCO Consumer Bills of Rights") and the explicit terms of its contract with Plaintiffs and the Class.  The New York Legislature passed the ESCO Consumer Bills of Rights bill of rights to protect consumers from precisely the type of unscrupulous business practices utilized by Viridian.  Faced with a well-pled Complaint replete with specific allegations detailing Defendant's deceptive conduct (which amplifies the previous cases brought against the Company), Viridian has chosen to file a blunderbuss motion to dismiss that both distorts the facts and law.  As Plaintiffs demonstrate in this opposition, Viridian has not lived up to its obligations to comply with either New York's consumer fraud statute (N.Y. G.B.L. § 349) or the new ESCO statute (N.Y. G.B.L. §349-d), and has harmed many thousands of New York customers.  Utility

payments are one of the largest expenses many New York families confront; to prey on these consumers is unconscionable, and this Court should not countenance Defendant's attempts to evade liability for its bad acts. Viridian's motion should be denied.

## II.   ARGUMENT

### A. Legal Standard and Factual Background

In considering a motion to dismiss, all allegations in the complaint must be taken as true and construed in the light most favorable to the Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility analysis is "context-specific," and courts are advised to draw upon "judicial experience and common sense" in applying it. *Iqbal*, 556 U.S. at 679. However, assessing plausibility does not involve analysis of the merits. *Twombly*, 550 U.S. at 556-57.

Here, Plaintiffs Susana and Boris Mirkin more than adequately allege facts showing their entitlement to relief under both of their two main theories: first, that Viridian violates New York's consumer protection statutes (N.Y. G.B.L. §§ 349 and 349-d) by engaging in deceptive conduct and failing to make the requisite disclosures to consumers about its variable energy rates, and second, by violating its contracts with consumers and the implied covenant of good faith and fair dealing.

Under the first prong, Plaintiffs' challenge Viridian's central (but false) message to consumers is that it provides green energy at prices lower than conventional "brown" energy and that its rates are competitive. FAC ¶¶ 5-6. Using this message, in the fall of 2013 one of Viridian's direct-marketing associates showed Viridian's uniform marketing materials to the Mirkins and convinced them to switch their electricity account to Viridian. *Id*. ¶ 38. The truth is, however, Viridian's energy prices are not lower than the price of conventional energy nor are

its rates competitive. *Id.* ¶ 7. Rather, Viridian charges much more than sellers of conventional energy, and its rates go up even when the market rate goes down. *Id.*

To make matters worse, Viridian's deceptive marketing is furthered by a classic bait and switch: the Company initially sells its energy via short-term "teaser" fixed-rate plans that expire within six months. *Id.* ¶ 8. After these short-term fixed-rate plans lapse, Viridian then automatically rolls unsuspecting customers into a variable rate plan with sky high prices that are neither competitive nor lower than the rates charged by sellers of conventional energy – key facts Viridian does not disclose. *Id.* ¶¶ 8-9. This conduct is unlawful in two respects: (A) it is a consumer fraud in violation of N.Y. G.B.L. §§ 349 and 349-d(3) for Viridian to promise savings and competitive prices when Defendant knew and did not disclose that its rates were not competitive and were much higher than the cost of conventional energy (*id.* ¶¶ 3-10, 34-49); and (B) Viridian violated N.Y. G.B.L. § 349-d's mandatory disclosure requirements that an ESCO's variable charges must be clearly and conspicuously identified in *all* energy contracts and *all* marketing materials. *Id.* ¶¶ 11-13, 50-55, Counts I-III.

The second component of the Mirkins' case arises out Viridian's consumer contract. Viridian's "New York Terms & Conditions" state that the Company's variable rates are "based on wholesale market conditions" applicable to consumers' existing utility. *Id.* ¶ 13. Yet contrary to the terms of its binding contract, Viridian consistently and improperly charges extraordinarily high rates that are not based on fluctuations in the underlying wholesale market price. *Id.* Instead, while Viridian hikes up its rates as the underlying market price increases, when the wholesale market price goes down Viridian maintains inflated rates that are substantially higher than the market rate. *Id.* Further, Viridian routinely charges consumers more than three times the underlying wholesale market rate, notwithstanding Defendant's

contract, which states that the energy company's variable rates are "based on" monthly wholesale electric prices. *Id.* ¶ 14. This conduct violates the terms of Viridian's consumer contract and the implied covenant of good faith and fair dealing. *Id.* ¶ 55, Counts IV-V. As explained in the paragraphs below, Plaintiffs' claims are well pled, are based on facts that demonstrate their entitlement to relief, and are supported by the applicable case law.

### B. The Complaint More Than Adequately Pleads Violations of New York's Mandatory Variable Price Disclosure Statute – Count I

*(Responding to Def.'s Br. Section III(B) at 10-19)*

Plaintiffs' first cause of action arises under N.Y. G.B.L. § 349-d, the Energy Services Company Consumers Bill of Rights. This new law was enacted to "establish[] important consumer safeguards in the marketing and offering of contracts for energy services to residential and small business customers." N.Y. Sponsors Mem., 2009 A.B. 1558, at 1 (2009), annexed as Ex. A to the Declaration of Steven L. Wittels ("Wittels Decl."); *see also Yang Chen v. Hiko Energy, LLC*, No. 14 Civ. 1771 (VB), 2014 WL 7389011, at *6 (S.D.N.Y. Dec. 29, 2014) ("Section 349-d of the G.B.L. was enacted in 2011 to target abuses in the energy services market.") (quotation marks and alterations omitted).

As the Sponsors Memo for the 2011 law notes, N.Y. G.B.L. § 349-d targets the exact type of deceptive conduct that harmed the Mirkins: "High-pressure and *misleading sales tactics*, onerous contracts with unfathomable *fine print*, short-term "teaser" rates followed by *skyrocketing* variable prices – many of the problems recently seen with subprime mortgages are being repeated in energy competition." Wittels Decl. Ex. A, N.Y. Sponsors Mem. at 3-4 (emphasis added).

As such, N.Y. G.B.L. § 349-d provides broad consumer protections, including § 349-d(7) which explicitly requires that ESCOs like Viridian make clear and prominent disclosures to educate consumers about the financial risks posed by variable energy rate plans. N.Y. G.B.L. §

349-d(7) states "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified."  Here, Plaintiffs allege that Viridian's contract and marketing materials do not (1) clearly or (2) conspicuously set forth the factors affecting Viridian's variable rates.  FAC ¶¶ 50-54.

Concerning Viridian's marketing materials, the Complaint tracks Plaintiffs' experience switching their electricity account to Viridian and shows how the Viridian marketing they were provided either does not even mention that Viridian's rates are variable, or offers only inconspicuous, ambiguous, and even false statements about Viridian's variable rate.  *Id*.  In fact, from the initial solicitation to the provision of the fine-print contract after a customer is enrolled, all of the materials Viridian provided Plaintiffs flout N.Y. G.B.L. § 349-d(7)'s disclosure requirements, which were enacted to afford consumers the information necessary to make informed choices: "These provisions will go a long way toward restoring an orderly marketplace where consumers can make informed decisions on their choices for gas and electric service . . . ." Wittels Decl. Ex. A, N.Y. Sponsors Mem. at 4.

Notwithstanding the clear language and express purpose of N.Y. G.B.L. § 349-d, as well as the documents annexed to the FAC that plainly demonstrate Viridian's failure to provide the mandated disclosures, the Company attempts to evade liability through two unconvincing arguments.  First, for the marketing material that doesn't even mention that Viridian charges a variable rate, Defendant asserts that in spite of the statutory text requiring that the disclosure be made "in all marketing materials" Viridian's should be given a pass because, according to Viridian, the challenged marketing is not really about Viridian's rates.  Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pls.' First Am. Compl. ("Def.'s Br.") at 11-14.  Not true; Viridian's marketing material uniformly touts that Viridian's green energy is less expensive than

conventional energy.  Further, N.Y. G.B.L. § 349-d(7) applies to all marketing material, irrespective of whether the marketing mentions the energy supplier's rates.  Second, where Viridian's variable rates are mentioned in documents provided to the Mirkins, the Company argues that all Viridian is required to do is notify consumers that it charges a variable rate. Def.'s Br. at 14-19.  Setting aside the fact that Viridian's "disclosures" are utterly inconspicuous (which violates N.Y. G.B.L. § 349-d(7)) and the fact that multiple of Viridian references to its variable rates are either false or ambiguous (which also violates N.Y. G.B.L. § 349-d(7)), Viridian's argument about what information must be disclosed is belied by both the statutory text and its legislative history.  As described below, both the documents annexed to the FAC and applicable law demonstrate that Viridian has failed to comply with the statute and that Plaintiffs' N.Y. G.B.L. § 349-d(7) claims should be sustained.

   1. Viridian's Marketing That Fails to Mention Its Variable Rates Clearly Violates N.Y. G.B.L. § 349-d(7) – There is No Injustice in Requiring Viridian to Make the Mandated Disclosures when It Advertises that Consumers Who Switch Will Save

In defending the marketing material that fails to even disclose that Viridian charges variable energy rates, Defendant offers the Court an exceedingly constrained reading of N.Y. G.B.L. § 349-d(7) and then mischaracterizes its marketing in an effort to show that Viridian has complied.  N.Y. G.B.L. § 349-d(7) states that "[i]n *every* contract for energy services and in *all* marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified."  (Emphasis added).  Confronted with the fact that one of the documents Viridian mailed to the Mirkins makes no mention of Viridian's variable rates whatsoever (FAC Ex. 3), Viridian offers the wholly unsupported assertion that New York's mandatory disclosure requirement applies only when an ESCO "advertises a specific rate or rate plan for its energy . . . ."  Def.'s Br. at 12.  Armed with this invented reading of the statute (which flatly contradicts the statute's text) Viridian then proceeds to characterize FAC Exhibit 3

6

and all but one of the other marketing materials annexed to the FAC as not relating to "Viridian's rate structure[.]"  *See* Def.'s Br. at 12-13 ("Of all those documents, the only one that mentions Viridian's rate structure is the Affordable Green Energy brochure set forth in Exhibit 4.").

In other words, Defendant urges the Court to find that when the New York Legislature drafted a new disclosure requirement targeting abuses in its deregulated energy markets that explicitly applies to "all marketing material" provided to consumers, what the Legislature really intended was that companies like Viridian be permitted to disseminate marketing that discusses the costs of the energy they sell (*see, e.g.*, FAC Ex. 3 ("Our Mission: Viridian was built on the idea that customers should never have to choose between affordability and sustainability[,]" and "Viridian's affordable green energy.")) and yet be relieved of the variable rate disclosure requirement as long as the marketing doesn't discuss a "rate structure."[1]

There are several reasons why the Court should reject Viridian' contorted reading of N.Y. G.B.L. § 349-d(7).  First and foremost, it is completely at odds with N.Y. G.B.L. § 349-d(7)'s text.  The New York law requires that *all* ESCO contracts and *all* marketing materials provided to consumers clearly and conspicuously identify the variable charges that affect an ESCO's variable rates.  N.Y. G.B.L. § 349-d(7).  There is nothing in the statute's text limiting the disclosure requirement to only marketing that sets forth a "rate structure."  Def.'s Br. at 13. Second, allowing Viridian to read the statute to cover only marketing that discusses a "rate

---

[1] Viridian's proclamation in its marketing (FAC Exhibit 3) that its "Mission" is for consumers to not have to choose between affordability and sustainability, as well as the brochure's multiple additional references to "Viridian's affordable green energy" of course also plainly gainsays Viridian's assertion in its brief that "Exhibit 3 makes no mention of Viridian's various rate structures; it does not mention Viridian's rates at all."  Def.'s Br. at 10-11, n.12.  Certainly, the claims Viridian makes in its marketing brochure about its rates' affordability are clear examples of Viridian "advertising a specific rate," namely one that is lower than the cost of traditional energy.  Thus, as further discussed herein, the Court should reject Viridian's attempt to engraft onto N.Y. G.B.L. § 349-d(7) a limitation that the disclosures are required only for marketing where "a supplier advertises a specific rate or rate plan."

structure," renders inoperative the law's "all marketing material" language, which of course

violates "the most basic interpretive canon requiring us to interpret statutes such that no part will

be inoperative or superfluous." *In re Barnet*, 737 F.3d 238, 249 (2d Cir. 2013).[2]

Third, N.Y. G.B.L. § 349-d(7) is remedial legislation and should broadly construed. S*ee*

*Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) ("New York courts apply

[G.B.L. § 349] broadly.") (citing *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290-91 (1999)); *Banks

v. Consumer Home Mortgage, Inc.*, No. 01 Civ. 8508 (ILG), 2003 WL 21251584, at *12

(E.D.N.Y. Mar. 28, 2003) ("Section 349 is a remedial statute that requires a liberal construction

and application" and ruling that aiding and abetting deceptive conduct is actionable under N.Y.

G.B.L. § 349) (quotation marks and citation omitted).[3]  In the instant case, N.Y. G.B.L. § 349-d's

legislative history makes clear that the "evil" to be suppressed is "short-term 'teaser' rates

followed by *skyrocketing* variable prices[,]" which is the exact harm Viridian visited upon the

---

[2] Plaintiffs note that Viridian only provided Plaintiffs with FAC Exhibits 2-4 (marketing material) and 8
(Viridian's contract). FAC ¶¶ 38-40.  Plaintiffs annexed the other examples of Viridian's marketing to
demonstrate that Viridian's central message to consumers is that it sells green energy that is less
expensive than conventional energy and that its energy is competitively priced.  These additional
materials also demonstrate that Viridian made no effort to comply with N.Y. G.B.L. § 349-d(7)'s
disclosure requirements.  Nevertheless, because Plaintiffs were not "provided" these documents they do
not form the basis of their claims.  *See* N.Y. G.B.L. § 349-d(7) (covering only documents provided to
consumers).  Notably, however, all of the Viridian marketing material provided to Plaintiffs' reiterate
Viridian's core message about its rates: "[D]o something better for the environment while saving money
on your energy costs at the same time." (FAC Ex. 2); "Our Mission: Viridian was built on the idea that
customers should never have to choose between affordability and sustainability." (FAC Ex. 3);
"Viridian's affordable green energy." (same); "MAKING A DIFFERENCE JUST GOT REALLY
EASY" (FAC Ex. 4); "Making the right choice for the environment doesn't have to cost more.  In fact the
average Everyday Green customer saves money on energy costs over time." (same); "AFFORDABLE
GREEN ENERGY" (same); "clean energy choices at competitive prices." (same).

[3] *See also N.Y. Pub. Int. Res. Grp., Inc. v. Ins. Info. Inst.*, 531 N.Y.S.2d 1002, 1006 (N.Y. Sup. Ct. 1988)
("Both G.B.L. §§ 350 and 349 qualify as remedial statutes . . . . Remedial statutes such as these require
liberal construction and application, 'to spread their beneficial results as widely as possible.'") (quoting
Stat. Law § 54 (McKinney 1971)); *id.* ("In addition, the court must consider the mischief sought to be
remedied and should favor the construction which would suppress the evil and advance the remedy.")
(quotation marks and citation omitted).

Mirkins.  Wittels Decl. Ex. A, N.Y. Sponsors Mem. at 3-4 (emphasis added).  Accordingly, where Viridian's marketing touts that its green energy is less expensive than conventional energy, that marketing must contain the disclosures required by N.Y. G.B.L. § 349-d(7).

Fourth, despite Viridian's assertion that a literal construction could potentially lead to inequitable results when applied to marketing like business cards, pens, and mugs (Def.'s Br. at 12), there is no question that all of the marketing materials Viridian provided to Plaintiffs (as well as the additional examples annexed to the FAC) tout that Viridian's energy costs less than conventional energy.  As such, there is no legitimate excuse for Viridian's failure to comply with the law as written.   In fact, in resolving *this* case, it is "not only unnecessary, but also unwise, for the Court to issue an opinion on the entirely hypothetical question[s]" to which Viridian improperly seeks to shift the Court's attention.  *Air Courier Conference of Am. v. Am. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 531-32 (1991) (Stevens, J., concurring); *Fedorenko v. United States*, 449 U.S. 490, 512, n.34 (1981) (because there was "no question" that the conduct before the Court "fit[] within statutory language," it was unnecessary for the Court to address other conceivable factual scenarios; "*Other cases may present more difficult line-drawing problems but we need decide only this case*.") (emphasis added).[4][5]

---

[4] *See also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 447 (2010) ("Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom.") (quoting R. Bork, The Tempting of America 169 (1990)); *Grand ex rel. U.S. v. Northrop Corp.*, 811 F. Supp. 333, 336-67 (S.D. Ohio 1992) ("We are quite sure that strange problems and questions may arise in the application of the plain meaning of many statutes under particular facts.  Still, the task of this Court is not to answer every conceivable question or hypothetical about a statute.  Instead, it is this Court's duty to interpret and apply a statute to the facts of the case before it.") (citations omitted); *Riley v. Brook*, No. 15 Civ. 00150 (CR), 2015 WL 7572308, at *3 (D. Vt. Nov. 24, 2015) ("The plaintiff also raises numerous hypothetical absurd results of a plain language interpretation of the statute, but these are not persuasive, as there is no absurd result in the instant case.") (quoting *Lengel v. Equipe Sports, Ltd.*, 738 A.2d 116 (Vt. 1999) (alterations omitted).

Fifth, contrary to Viridian's contention, N.Y. G.B.L. § 349-d's legislative history strongly favors a literal construction of the statute.  Contorting a single snippet from the comments of the bill's sponsor, Viridian asserts that then-Assemblyman Gianaris, a Queens Democrat, intended a result at odds with the statute's plain language.  Def.'s Br. at 12 (quoting the Comments of Assemblyman Michael N. Gianaris, "all variable charges must be clearly and conspicuously identified as such in contracts and marketing materials.").  But this quote offers no succor to Viridian's argument.  Rather, the Assemblyman's statement supports a plain language reading because like the statutory text it contains no mention of limiting the disclosure only to marketing "where an energy supplier advertises a specific rate or rate plan for its energy" (Def.'s Br. at 12).  Moreover, N.Y. G.B.L. § 349-d's legislative history contains several references to the need for safeguards against an ESCO using teaser rates to lure customers with promises of lower prices only to later have the ESCO saddle consumers with exorbitant energy rates.  *See* Wittels Decl. Ex. A, N.Y. Sponsors Mem. at 3-4 ("short-term 'teaser' rates followed by skyrocketing variable prices . . . ." ); NYC City Council Resolution Supporting N.Y. G.B.L. § 349-d ("The introductory rates often increase over the long term leaving residents paying dramatically higher fees[.]") (Def.'s Br. Exhibit E at p. 53); August 10, 2010 Letter from Assemblyman Gianaris to Counsel

---

[5] Viridian's cited cases don't counsel a different conclusion, as they all involve the inequitable application of the law to the case before the court.  *Sorrells v. United States*, 287 U.S. 435, 446-49 (1932) (unreasonable application of National Prohibition Act to individual lured by prohibition agent who repeatedly insisted that the defendant purchase him liquor and took "advantage of the sentiment aroused by reminiscences of their experiences as companions in arms in the World War."); *Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 631 F.3d 23, 28 (2d Cir. 2010) (unreasonable to read statute requiring service of petitions "stamped by the court with the date of filing" to apply in the Second Circuit, where there is "no direct analogue to a date stamp placed on the petition directly by the Court[.]"); *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985) (unreasonable to apply Connecticut Franchise Act to the distribution relationship between the parties because the relationship involved "only a minute percentage" of the alleged franchisee's business).  Here, there is nothing unreasonable about requiring Viridian to make the mandated disclosures in the documents it provided to the Mirkins (and many thousands more) because those documents all tout that switching to Viridian will save consumers money.

to the Governor ("Unfortunately, one side effect [of residential energy deregulation] has been the emergence of predatory operators that see money-making opportunities in swindling consumers through misleading information, devious sales practices and exorbitant termination fees.") (Def.'s Br. Exhibit E at p. 33).

Indeed, even the example from the N.Y. Sponsors Memorandum Viridian excerpts in its brief undercuts Defendant's reading of N.Y. G.B.L. § 349-d(7).  Def.'s Br. at 11.  By Viridian's logic if the sales agent in the example had presented the Brooklyn business owner with marketing material stating that he would save at least $200 a month (but not making a statement about a specific rate or a rate plan), the marketing material would not need to make the disclosures required by N.Y. G.B.L. § 349-d(7).  This of course would do nothing to prevent the harm suffered by the Brooklyn business owner, who "[a]fter a few months, [saw that] his monthly bill had doubled, and he learned that the contract had a variable charge that fluctuated wildly . . . ."  Def.'s Br. Exhibit E at p. 20.  In actuality, the Mirkins' experience is strikingly similar to that of the Brooklyn business owner and the Court should apply the plain language of N.Y. G.B.L. § 349-d(7) to all of the marketing material Viridian provided to Plaintiffs, including Viridian's marketing brochure (FAC Exhibit 3), which Viridian must concede does not even contain the word "variable."[6] [7]

---

[6] Viridian's claim that a plain language reading of N.Y. G.B.L. § 349-d(7) "would implicate First Amendment concerns regarding compelled speech" is also off base.  In the Second Circuit, statutes "mandating that commercial actors disclose commercial information are subject to the rational basis test." *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (quoting *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114-15 (2d Cir. 2001)) (quotation marks omitted).  Viridian's cited case, *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67 (2d Cir. 1996), in which the Second Circuit applied intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) "was expressly limited to cases in which a state disclosure requirement is supported by no interest other than the gratification of 'consumer curiosity.'" *New York State Rest. Ass'n*, 556 F.3d at 132.  Here, as Viridian concedes N.Y. G.B.L. § 349-d(7) is clearly enacted to combat deceptive advertising, which places any challenges to this law well within the rational basis framework

*Footnote continued on next page.*

2. The Marketing That Mentions Variable Rates and Viridian's Consumer Contract Violate N.Y. G.B.L. § 349-d(7) Because Viridian's "Disclosures" are Ambiguous, Inconspicuous, and in Some Cases Completely False

Turning to Viridian's contention that the documents that mention its variable rate made the required disclosures in a clear and conspicuous manner, Plaintiffs initially note that Viridian fails to explain how its contract can comply with  N.Y. G.B.L. § 349-d(7) when the contract's description of Viridian's variable rate is demonstrably false.  FAC ¶ 53.  Contrary to the contract's statement that Viridian's variable rates are "based on wholesale market conditions," the Company's rate increases when the market conditions drive down the wholesale market rate. *Id*.  A false disclosure is no disclosure at all, let alone one that is clear and conspicuous.  *See Sec. & Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1098 (2d Cir. 1972) (holding in the securities law context that "implicit in the statutory provision that the prospectus contain certain information is the requirement that such information be true and correct.").[8]

---

and thus there is "no obligation to produce evidence, or empirical data to sustain . . . rationality."  *Id.* at 135 n. 23 (quoting *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001)) (alterations in original); *see also Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985) (disclosure requirements combatting deceptive advertising need not establish that they are the "least restrictive means," nor that the law is not "under-inclusive:").

[7] Viridian also asserts in passing that if *any* of its marketing material is found to comply with N.Y. G.B.L. § 349-d(7), then *all* of the Company's marketing is lawful because the "purpose underlying Subsection (7)" would be fulfilled.  Def.'s Br. at 13-14.  Similar to Viridian's other contentions, Defendant's argument is completely at odds with the plain language of the statute and should therefore be rejected.  *Malta Town Ctr. I, Ltd. v. Town of Malta Bd. of Assessment Review*, 3 N.Y.3d 563, 568 (2004) (courts interpreting New York Law should look to "the plain language of the statutes as the best evidence of legislative intent.").  Further, persuasive case law construing the Truth in Lending Act's clear and conspicuous requirement demonstrates that disclosures in one document cannot cure the inadequate disclosures in another document.  *Altamirano v. Copiague Funding Corp.*, No. 6 Civ. 1751 (PCD), 2008 WL 3845362, at *4 (D. Conn. Aug. 18, 2008) ("Based on the various conflicting forms provided, it was not clear whether [Private Mortgage Insurance] was required or included.  Therefore, the finance charge was not clearly and conspicuously disclosed as required by the Truth in Lending Act.").

[8] Several cases under the Truth in Lending Act ("TILA") agree that a false disclosure violates a statutory disclosure requirement.  *See Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390-91 (3d Cir. 2002) ("The purpose of TILA is to assure 'meaningful' disclosures.  Consequently, the issuer must not

*Footnote continued on next page.*

Further, even if the Court adopts the statutory construction employed by Judge Pauley in *Wise v. Energy Plus Holdings LLC*, No. 11 Civ. 7345 (WHP), which as discussed in the next section Plaintiffs' respectfully believe was in error, Viridian's "disclosure" that it charges a variable rate are utterly inconspicuous and ambiguous.  As Judge Pauley explicitly recognized in *Wise*, N.Y. G.B.L. § 349-d(7) is violated when a disclosure is not clear or conspicuous.  *Wise*, Tr. of Hrg. on Def.'s Mot. to Dismiss, ECF No. 23 ("*Wise* Tr."), at 18:4-8 ("There is no allegation here that Energy Plus' statements are buried in fine print, illegible, or otherwise hidden from consumers . . . .").  Here, the Mirkin Plaintiffs make precisely such allegations.

For example, in Viridian's "Affordable Green Energy" brochure (FAC Ex. 4), Viridian's fine print is both buried (sandwiched in between information consumers are sure to ignore), on the back of the brochure, and is ambiguous (stating that Viridian "may" offer a variable rate plan).  FAC ¶ 51.  Likewise, Viridian's false description of its variable rates in its contract is indistinguishable from the other fine print in the three page document.  *Id*. ¶ 53 (quoting FAC Ex. 8).  The same is true for the welcome letter Viridian sent to Plaintiffs.  In that document, the statement that Viridian will default consumers onto a variable rate following the expiration of the teaser rate is in small print and is in the margin of the page.  FAC ¶ 52 (quoting FAC Ex. 2).

Regarding the applicable legal standard, Plaintiffs' agree that the question of whether Viridian's disclosures are "clear and conspicuous" can be decided as a matter of law.  Def.'s Br.

---

only disclose the required terms, it must do so accurately.  The accuracy demanded excludes not only literal falsities, but also misleading statements.") (citation omitted); *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) ("A misleading disclosure is as much a violation of TILA as a failure to disclose at all."); *Barnes v. Fleet Nat. Bank, N.A.*, 370 F.3d 164, 174 (1st Cir. 2004) (same, collecting cases); *Shields v. Lefta, Inc.*, 888 F. Supp. 894, 897 (N.D. Ill. 1995) ("Defendant appears to be arguing that as long as it used the model form, it could put false information on the form and be immune from any TILA claim for its compliance, which neither makes sense nor follows from TILA and TILA caselaw."); *Jenkins v. Landmark Mortgage Corp. Of Am*., 696 F. Supp. 1089 (W.D.Va. 1988) (disclosures were not "clear and conspicuous" as a result of misleading statements by a closing agent and misrepresentations in attached cover letter regarding TILA requirements).

at 15.[9]  Plaintiffs also agree that courts look to guidance issued by the Federal Trade

Commission (the "FTC") in determining whether New York's consumer protection statutes have

been violated. Def.'s Br. at 16-18.[10]  Relevant to the instant case, the FTC has established a test

for determining whether disclosures are "clear and conspicuous."  As recounted by Chief Judge

Amon in *United States v. Locascio*, 357 F. Supp. 2d 536, 549 (E.D.N.Y. 2004) (citing the FTC's

Dot Com Disclosures), the test:

> takes several factors into account in assessing whether a given disclosure meets
> the standard, namely the placement of the disclosure in an advertisement and its
> proximity to the claim it is qualifying; the prominence of the disclosures; whether
> items in other parts of the advertisement distract attention from the disclosure,
> whether the advertisement is so lengthy that the disclosure needs to be repeated;
> whether disclosures in audio messages are presented in adequate volume and
> cadence and visual disclosures appear for a sufficient duration; and whether the
> language of the disclosure is understandable to the intended audience.

*See also id.* ("Although it is true that these factors differ somewhat based on the medium being

used, they can be applied to any medium.").[11]

---

[9] *See Schwartz v. Goal Fin. LLC*, 485 F. Supp. 2d 170, 178 (E.D.N.Y. 2007) (noting that for claims under
the Fair Credit Reporting Act "courts have drawn upon the wealth of case law involving the Uniform
Commercial Code ("UCC") and the Truth in Lending Act ("TILA") for guidance in determining the
meaning of 'clear and conspicuous.'").  Under TILA "whether notice is 'conspicuous' is a matter of law
that is assessed using an objective standard."  *Smith v. Wells Fargo Bank, N.A.*, No. 15 Civ. 89 (SRU),
2016 WL 370697, at *3 (D. Conn. Jan. 29, 2016); *see also Victor v. Mammana*, 422 N.Y.S.2d 350, 351
(Sup. Ct. 1979) (The UCC, however, makes it absolutely clear that the decision on whether a disclaimer is
conspicuous is to be made by the court.").

[10] N.Y. G.B.L. § 349-d(7)  is a subpart of N.Y. G.B.L. § 349, which is modeled after the Federal Trade
Commission Act.  *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150 (JFK),
1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("Because section 349 is modeled after the Federal
Trade Commission Act, federal courts have interpreted the statute's scope as limited to the types of
offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C.
§ 45."); *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (same); *Great Br. Teddy Bear
Co. v McNeil-PPC, Inc.*, 2013 WL 1286148, at *10 (S.D.N.Y. Mar. 29, 2013) (same).

[11] While the Dot Com Disclosures are not binding on the Court, "[e]ven where not binding, an agency's
interpretation of a statute certainly may influence courts facing questions the agency has already
answered."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1201-02 (9th Cir. 2010) (quotation marks and
alterations omitted).

Here, the Dot Com Disclosures unambiguously condemn Viridian's practices.  In fact, the documents Viridian provided to the Mirkins all ignore crucial guidance from the FTC on how to make a disclosure that is clear and conspicuous.  The FTC advises that "[a]dvertisers should adopt the perspective of a reasonable consumer.  They should also assume that consumers don't read an entire Web site, just as they don't read every word on a printed page."  FTC, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising*, at 6.[12]  Further, "it is important for advertisers to draw attention to the disclosure. . . . Simply making the disclosure available somewhere in the ad so that consumers who are looking for the information *might* find it doesn't meet the clear and conspicuous standard."  *Id*. (emphasis added).

Contrary to this guidance, Viridian buried its disclosures in fine print on the back of its "Affordable Green Energy" brochure (FAC Ex. 4), in fine print in the margin of its welcome letter (FAC Ex. 2), and in the fine print of its consumer contract (FAC Ex. 8).   Indeed, instead of being clear and conspicuous Viridian's disclosures were presented in a manner guaranteed to minimize notice and comprehension.  *See* FTC, Full Disclosure (Sept. 23, 2014) ("Burying important information in a dense block of text is another common tactic that signals 'don't read me.'  In one FTC settlement, for example, material information about the terms of the transaction appeared after an advertiser's long litany of trademark information.").[13]

In fact, Viridian has flouted the FTC's explicit command: "**Don't bury it.**"  Dot Com Disclosures at 18 (emphasis in original).  As the FTC instructs, "[a] disclosure that is buried in a

---

[12] A*vailable at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf).

[13] *See also id*. ("The fine-print 'disclosure' and its TV cousin, the fleeting super, have long been the subjects of FTC law enforcement.  Consumers shouldn't have to scan an ad with a magnifying glass to pick up on material details of the deal.") (*available at*: https://www.ftc.gov/news-events/blogs/business-blog/2014/09/full-disclosure).

long paragraph of unrelated text will not be effective.  The unrelated text detracts from the

message and makes it unlikely that a consumer would notice the disclosure or recognize its

importance."  *Compare id. with* Viridian's "Affordable Green Energy" brochure, FAC Ex. 4

(Viridian's fine print is in a long paragraph and is crammed between a list of Viridian's state

business license numbers and the statement that the flyer is printed on recycled paper).[14]  The

FTC also notes that disclosures in form contracts should not be "buried."  *Compare* Dot Com

Disclosures at 18 ("[I]t is highly unlikely that consumers will read disclosures buried in "terms

of use" and similar lengthy agreements.") *with* Viridian's Terms and Conditions, FAC Ex. 8 (all

mention of variable rates are in fine print).

Another element of the clear and conspicuous test is the disclosure's proximity to "the

claim it qualifies or other relevant information."  Dot Com Disclosures at 8.  Under FTC

guidelines, disclosures are "more likely to be effective if consumers view the disclosure and the

claim that raises the need for disclosure (often referred to as a 'triggering claim') together on the

same screen."  *Id*.  Here, Viridian touts in its "Affordable Green Energy" brochure and welcome

---

[14] Viridian's disclosure that it "may" charge a variable rate is also ambiguous.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) (ambiguous disclosure not clear and conspicuous under TILA); *see also Velazquez v. GMAC Mortgage Corp.,* 605 F. Supp. 2d 1049, 1067 (C.D.Cal. 2008) (language stating "your initial interest rate may include a discount" used in TILA mandated disclosures regarding an initial interest rate was not clear and conspicuous as to whether rate was discounted or not). Viridian also asserts that its statement in the Affordable Green Energy brochure that its variable rate is based on "market conditions" rather than "wholesale market conditions" is not false because, according to the Financial Times Lexicon, the term "market conditions" is not the same as "wholesale market conditions."  Def.'s Br. at 13, n.16.  Yet Viridian offers no proof that the "market conditions" affecting this middleman energy supplier were materially different than the wholesale cost of energy.  *See* FAC ¶ 25 (detailing how ESCOs like Viridian are essentially brokers and traders that neither make nor deliver electricity, but merely buy electricity from the power companies and re-sell it to consumers.).  Further, Viridian's need to resort to the Financial Times Lexicon (which is not likely regular reading for New York's residential energy customers) to explain what "market conditions" are demonstrates that this term is utterly ambiguous and thus violates N.Y. G.B.L. § 349-d(7).  Indeed, the Financial Times' definition itself is so broad it covers the entire "industry sector."  It is also notable that the fine print of Viridian's Affordable Green Energy brochure mentions only "market conditions," not the 50-word explanation from the Financial Times Viridian highlights in its brief.

letter that consumers who switch will save money, yet its variable rate disclosures are not

positioned in a way that connects the disclosures to Viridian's central marketing message.  For

example, while proclaiming throughout its Affordable Green Energy brochure that "the average

Everyday Green customer saves money on energy costs over time," and "making the right choice

doesn't have to cost more," Viridian's mention of variable rates is buried on the back of the

brochure, where *none* of Viridian's claims about savings are made.  FAC Ex. 4; *see also* FTC,

Full Disclosure ("If you need to include key qualifications or conditions, remember this maxim:

What the headline giveth, the footnote cannot taketh away.").[15]

      Similarly, Viridian's "disclosure" about variable rates in the welcome letter is not in the

same paragraph as the claim that Plaintiffs will be doing "something better for the environment

while saving money on [their] energy costs at the same time."  Such placement of course rejects

the FTC's guidance that where possible (as was the case with the welcome letter) disclosures

should be "incorporated into the text, along with the claim."  Dot Com Disclosures at 8.

      Finally, the Dot Com Disclosures advise that when consumers are "trying to complete a

task and obtain a specific product or service," consumers "may not pay adequate attention to a

disclosure that does not relate to the task at hand."  *Id*. at 18.  In the instant case the Mirkins

signed up to purchase energy at a fixed rate based on Viridian's uniform marketing that

Viridian's green energy was less expensive than conventional energy and was competitively-

---

[15] The fact that Viridian repeats multiple times in the Affordable Green Energy brochure its central message that its green energy is less expensive than conventional energy easily defeats Viridian's quizzical claim that the disclosure in that document is not meant to "modify (i.e. 'fix') any other claim presented in larger font size elsewhere in the document[,]" and that there is thus no "concern regarding disclosures being placed proximate to the advertising claims they modify[.]"  Def.'s Br. at 16, n. 18. Indeed, given that N.Y. G.B.L. § 349-d(7) requires that *all* variable charges be clearly and conspicuously identified in *all* contracts and *all* marketing material, it is obvious that the purpose of the disclosure requirement was to mandate that ESCOs clearly and conspicuously modify their claims about savings – precisely what Viridian failed to do in this case.

priced (FAC ¶ 38); they were not actively enrolling in a variable rate plan. Rather, they were defaulted into Viridian's variable rate via a negative option. FAC ¶¶ 8, 42. The FTC highlights that a disclosure that is not related to the primary subject of transaction "can be problematic" if the transaction contains a negative option "for a different product or service." Dot Com Disclosures at 18. To combat the problems associated with negative option billing, the FTC recommends requiring that the consumers' "affirmative acknowledgement" be obtained "early in the decision-making process, e.g., before the primary item is actually added to a shopping cart." *Id*. Despite this straightforward guidance concerning how Viridian should have presented its negative option variable rate plan, the Company's disclosures about the negative option were buried in the contract and welcome letter and were sent to the Mirkins after they had already elected to switch. FAC ¶ 40; *see also Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, 2010 WL 3894576, at *5 (N.D. Ind. Sept. 27, 2010) ("A conspicuousness requirement is meaningless if the buyer can't read the [disclosure] at the time of the sale, or reads the [disclosure] only after the fact.").

The truth is that no one knows better than "advertisers how to convey information clearly and conspicuously[.]" FTC, Full Disclosure. As the FTC observes, marketers such as Viridian should think of the clear and conspicuous standard in terms of the following question: "How would you send the message if you really wanted to, rather than because you think you have to?" *Id*. Considering the documents Viridian provided to the Mirkins in this way, it is easy to see that Viridian's disclosures don't comply with N.Y. G.B.L. § 349-d(7).

Defendant's remonstrations don't change this fact. In an effort to downplay its buried fine print Viridian asserts that the FTC does not require a specific font size, that small text does not necessary render a disclosure inconspicuous, that the Dot Com Disclosures do not have the

force of law, and that less elaborate disclosures than those required in television advertising may nevertheless meet the clear and conspicuous standard.  Def.'s Br. at 16-18.  Even assuming *arguendo* the truth of Viridian's assertions, none of those premises demonstrate how the documents Viridian provided Plaintiffs meet the clear and conspicuous test.  Indeed, of these documents the Company only attempts to defend its Affordable Green Energy brochure, apparently conceding that its contract and welcome letter are not compliant.  *See* Def.'s Br. at 18.

Moreover, Viridian's defense of its brochure is half-hearted and misleading.  Viridian points to the Affordable Green Energy brochure and claims that its statement describing both variable and fixed rate plans is in "all capital letters, whereas the text in the balance of the brochure is not."  *Id*. at p. 17-18.  That is not true.  Even when viewing the version of the brochure attached as Exhibit 4 to the FAC (which Viridian contends is too blurry), it is clear that Viridian's fine print statement is not in all caps and that the brochure contains more than a dozen instances of text in all capital letters, including statements such as "AFFORDABLE GREEN ENERGY" and "MAKING A DIFFERENCE JUST GOT REALLY EASY."   Further, the brochure repeatedly uses bold font to hammer home Viridian's messaging about price: "**The best part?** Making the right choice for the environment doesn't have to cost more[,]" and "**Making the right choice doesn't have to cost more.**"  FAC Ex. 4.  Viridian's disclaimer is also borderless and has no heading.  *Victor v. Mammana*, 101 Misc. 2d 954, 956 (Sup. Ct. 1979) (Warranty disclaimer did not satisfy UCC's clear and conspicuous requirement where disclaimer written in small print except for the word WARRANTY, was borderless, and had no heading.)

In addition, while Viridian emphasizes that the "disclosure is made in sharp white text contrasting the deep green-background against which it appears," the Company ignores the fact that this text is buried in fine print, is at the bottom of a long paragraph, and is on the back of the

19

brochure.  Def.'s Br. at 18; *see also Cole v. U.S. Capital*, 389 F.3d 730, 731 (7th Cir. 2004) (disclosure not "clear and conspicuous" where it was made in a paragraph at very bottom of flyer, printed in font size that was smallest text on the page, was not set off from remainder of text in any way, and the remainder of the flyer utilized "all caps, bold, italics and various font sizes to emphasize other information being communicated"); *Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 948 (N.D.Ill. 2006) (disclosure was "designed to discourage the reader's attention" where notice appeared in a single paragraph at the bottom of a flyer, was printed in the smallest typeface on the page, and the remainder of the flyer was printed in "larger, readable type, and uses all caps, bolding, underlining, and contrasting graphical elements to draw the reader's attention to other information").

Further, despite recognizing that courts look to guidance from the FTC, Viridian makes no effort to show how the brochure's disclosure is clear and conspicuous in terms of placement, proximity, prominence, whether items in other parts of the advertisement distract attention, and whether the disclosure needs to be repeated.  *Locascio*, 357 F. Supp. 2d at 549.  Indeed, Viridian surely knows that the Dot Com Disclosures recommend that advertisers monitor whether consumers are actually seeing disclosures by obtaining relevant empirical evidence (*id*. at 13.) and counsel advertisers to consider empirical research about where consumers do and do not look (*id*. at 8.).  Yet Viridian has failed to offer any evidence (much less credibly argue) that it monitored whether consumers were seeing and understanding the Company's fine print, provide the research it relied upon in deciding to make reference its variable rate only in small print, and produce the empirical evidence that shows its customers saw its "disclosures."  *See also Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) (Cited by Viridian and stating that "empirical evidence is helpful in determining what a reasonable consumer will understand and

readily notice.").  Instead of presenting such evidence, however, Defendant relies on a

misrepresentation about the disclosure's font and a claim about contrast of the fine print's text.

Def.'s Br. at 18.

       Viridian's cases, which we discuss seriatim, are also not on point.  In *Coleman v. Kohl's*

*Dep't Stores, Inc.*, the court found that clear and conspicuous requirements of the Fair Credit

Reporting Act were met by a document that "bears a distinct title and form code[,]" was related

"to consumer reports only[,]" "contains a disclosure and authorization provision, and also

identifies other relevant information such as the consumer reporting agency and the consumer's

right to review the report obtained."  2015 WL 5782352, at *5-7 (N.D. Cal. Oct. 5, 2015).

Viridian's fine print is a far cry from the document under consideration in *Coleman*.

       Similarly, in *Spera v. Samsung Elecs. Am., Inc.*, the UCC warranty disclaimer was in all

capital letters and was "similar to other disclaimers previously found to adequately disclaim

warranties."  No. 12 Civ. 05412 (WJM), 2014 WL 1334256, at *8 (D.N.J. Apr. 2, 2014).  Here,

none of Viridian's disclosures are in all capital letters and the applicable guidance from the FTC

demonstrates that that Defendant's disclosure is not adequate.[16]  *In re Vistaprint Corp Mktg. &*

*Sales Practices Litig.*, also doesn't help Viridian.  No. 8 MD 1994 (NFA), 2009 WL 2884727, at

*11-12 (S.D. Tex. Aug. 31, 2009).  In that case the court relied on the FTC's Dot Com

Disclosures to find that an online enrollment was clear and conspicuous because the disclosure

was located immediately next to a box where the plaintiff had to twice enter his email address,

---

[16] Plaintiffs pause to note that page two of Viridian's contract (FAC Ex. 8) contains a UCC warranty disclaimer that is strikingly similar to the one under consideration in *Spera*.  This proves that Viridian knew how to comply with a conspicuousness requirement and yet hid the disclosures in its contract (and the other marketing materials provided to Plaintiffs).

was clear and simple, was made before he decided whether to click "Yes" or "No Thanks," and had a bold print heading. *Id*. None of those factors are present here.

In *Schwartz v. Goal Fin. LLC*, the disputed disclosure on the back of the document was "the only text found on that page," and the front of the document "signals to the reader that the disclosure statement is on the reverse side, is set-off in one of the three boxes on the page, uses the same size font as that found on the rest of the page, and capitalizes the words 'prescreen' and 'opt-out notice.'" 485 F. Supp. 2d 170, 178 (E.D.N.Y. 2007). None of Viridian's disclosures are the only text found on the page, and none of Viridian's disclosures are preceded by notices to consumers in all capital letters that are set off in boxes.

Likewise, *Freeman v. Time, Inc.*, which did not involve the explicit requirement that the disclosure be made in a clear and conspicuous manner, centred on a sweepstakes mailer (not as here an energy bill, one of a family's most important household expenses) that represented in large print that the plaintiff had won the sweepstakes, but was qualified by language in smaller type that participants would only win if they returned the winning prize number. 68 F.3d 285, 289-90 (9th Cir. 1995). Unlike the case at bar, however, the "qualifying language appear[ed] immediately next to the representation it qualify[ed] and no reader could ignore it." *Id*. Further, "[a]ny persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes." *Id*. Here, none of the documents that contain Viridian's disclosures required consumers to take any act that would alert them to Defendant's fine print.

Finally, while it is true that in *In Re Litton Indus., Inc.* the FTC noted it was acceptable for Litton to use fine print to qualify a statement "of only limited relevance," Viridian's brief neglects to mention that two paragraphs later the FTC held that fine print was inadequate to

qualify Litton's prominent claims about its survey of "Litton-authorized service providers,"

which Litton had attempted to "pass [] off as being a survey of *all* service technicians."  97

F.T.C. 1, *39, n.6 (1981).  Plaintiffs here do not challenge the adequacy of disclosures with

"only limited relevance."  Rather, just like the claim the FTC found could not be modified by

fine print, the disclosure requirement Plaintiffs seek to enforce goes to the heart of Viridian's

claims about the cost of its residential energy, which Viridian repeatedly and consistently touted

as being less expensive than conventional energy.  In sum, the case law (including Viridian's

cases) overwhelmingly supports a finding that Viridian's "disclosures" are not clear and

conspicuous because Viridian's statements are buried in fine print, are ambiguous, and in some

instances are completely false.[17]

    3.   **The Court Should Find That the Content of Viridian's Disclosures Do Not Satisfy
        N.Y. G.B.L. § 349-d(7)'s Requirement That All Variable Charges Be Identified.**

    Relying on Judge Pauley's decision in *Wise v. Energy Plus Holdings*, which held that the

statement of "all of our charges vary" was adequate under N.Y. G.B.L. § 349-d(7), Viridian

---

[17] Viridian also asserts that as a prerequisite to recovering under N.Y. G.B.L. § 349-d(7), a consumer need
to have read the disputed disclosures, or been unable to find the disclosure, or allege that it was
unreadable, or that he or she did not understand the disclosure.  Def.'s Br. at 19.  Viridian's attempt to
engraft a subjective reliance requirement onto N.Y. G.B.L. § 349-d(7)'s disclosure regime is misplaced
and has been rejected in analogous TILA caselaw.  *See Rubio*, 613 F.3d at 1200 (a statutorily required
"disclosure that is not 'clear and conspicuous' is *ipso facto* 'misleading.'"); *see also Altamirano v.
Copiague Funding Corp.*, No. 06 Civ. 1751 (PCD), 2008 WL 3845362, at *3 (D. Conn. Aug. 18, 2008)
("TILA achieves its remedial goals by a system of strict liability in favor of the consumers when
mandated disclosures have not been made")(quoting *Clement v. American Honda Finance Corp.,* 145 F.
Supp .2d 206, 210 (D.Conn. 2001)); *Aubin v. Residential Funding Co., LLC*, 565 F. Supp. 2d 392, 395
(D. Conn. 2008) ("[C]ourts generally agree that it is measured by an objective, rather than a subjective
test; thus, the question courts ask is whether the average consumer would find the notice clear or
confusing."); *Jenkins v. Landmark Mortgage Corp. of Virginia*, 696 F. Supp. 1089, 1095 (W.D. Va. 1988)
("Defendants allege that there is no evidence that plaintiff was actually misled or confused by the
information disclosed to her. . . . [D]efendants' allegation . . ., even if true, would be legally irrelevant.
The legal inquiry about the quality of disclosure is not directed at whether the credit consumer was
actually confused or misled.  Nor does it matter whether the consumer would have rescinded the
transaction had a "clear and conspicuous" disclosure taken place.  The court must engage only in an
objective inquiry into the violation of specific provisions of TILA requirements.").

argues that it is only required to "identify that its rates are variable." Def.'s Br. at 14. While the case at bar is easily distinguished from *Wise* because as discussed above Plaintiffs also challenge the clarity *and* conspicuousness of Viridian's disclosures, for the following reasons Plaintiffs respectfully disagree with Judge Pauley's conclusion concerning the extent of disclosure required by the statute, and believe that this Court should interpret N.Y. G.B.L. § 349-d(7) to require the disclosure of the variables that affect an ESCO's rate and how those variables will affect the overall rate charged to consumers.

      Reading the statute to require an ESCO to disclose only that its rates are "variable" runs counter to both Section 349-d(7)'s text, purpose, and the experience of New York's consumers. Section 349-d(7) does not use the term variable "rate." It requires the identification of "all variable charges" that contribute to an ESCO's rate. N.Y. G.B.L. § 349-d(7). Indeed, given the fact that ESCOs only charge one "rate," the per kilowatt hour (electricity) or therm (gas) rate which is listed on their customers' bills, *see* Wittels Decl. Ex. B p. 3 of 3 (Plaintiffs' bill, which shows only a 16.49¢ per kWh charge), it makes no sense that the Legislature would use the plural "charges" and require the ESCO to "clearly and conspicuously" identify "*all* variable charges" but in fact only intend that an ESCO disclose that its rate is variable. Allowing an ESCO to read the statute in this way renders the "all variable charges" language inoperative. Further, the mere statement that an ESCO's rate is "variable" is vague and thus does not comport with the statute's "clear and conspicuous" requirement. *See Geron v. Robinson & Cole LLP*, 476 B.R. 732, 740 (S.D.N.Y. 2012) ("When confronted with two apparently conflicting statutes, New York courts adopt any fair construction that yields a reasonable field of operation for both statutes.") (quotation marks omitted).

24

In addition, given that one of the purposes of N.Y. G.B.L. § 349-d was to make "fair marketing standards broadly enforceable" (Wittels Decl. Ex. A, N.Y. Sponsors Mem. at 3) without a full identification of all variable charges – which educates consumers as to the factors that can cause those prices to rise – consumers told "all of our charges vary" are given no advance warning of what circumstances may lead their energy prices to skyrocket and have no way to compare an ESCOs variable rates to its fixed rates.  The Mirkins' case serves as a prime example.  Even if presented in a clear and conspicuous manner, none of Viridian's references to its variable rate plan would have led a reasonable consumer to conclude that Viridian's variable rates would be so much higher than its fixed rates.  *Compare* FAC Ex. 2 (welcome letter, stating that the teaser rate is 8.99¢ per kWh) *with* Wittels Decl. Exs. B p. 3 of 3 (showing 16.49¢ per kWh charge under Viridian's variable rate plan).

Regardless, we submit that the Court should find that Viridian's purported disclosures are inadequate as a matter of law, either because they do not identify all variable charges, or because they are false, ambiguous, and inconspicuous (which does not conflict with *Wise*).

### C. The Complaint States a Claim that Viridian Engaged in Deceptive Conduct Declared Unlawful by N.Y. G.B.L. §§ 349-d(3) and 349 – Counts II-III
*(Responding to Def.'s Br. Section III(C) at 19-30)*

"To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 128 (E.D.N.Y. 2011) (citations and quotations omitted).  Section 349-d(3) has the same elements as section 349(a).  *See Yang Chen v. Hiko Energy, LLC*, No. 14 Civ. 1771 (VLB), 2014 WL 7389011, at *6 (S.D.N.Y.2014) (applying the same elements to sections 349(a) and 349–d(3)).  Here, Viridian challenges the sufficiency of the FAC with respect to the second and third elements.  Def.'s Br. at 19-30.

In ruling on a motion to dismiss a N.Y. G.B.L. § 349 claim, courts should consider four important aspects of this law.  First, N.Y. G.B.L. § 349 claims are not subject to Rule 9(b)'s heightened pleading requirements.  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  Second, to state a N.Y. G.B.L. § 349 claim, plaintiffs need not allege reliance on defendants' misrepresentations.  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y. 3d 940, 941, 944 (2012).  Third, plaintiffs need not plead defendants knew or should have known the statements were false or misleading.  *Oswego Laborers'*, 85 N.Y.2d at 26.  Finally, "whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss."  *Ackerman v. Coca–Cola Co.*, No. 09 Civ. 0395, 2010 WL 2925955 (JG), at *17 (E.D.N.Y. July 21, 2010) (quotation marks omitted); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same, quoting *Ackerman*); S*ims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289 (1st Dep't 2003) (same).

1. <u>Viridian's Misrepresentations and Omissions are Deceptive</u>

A practice is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  The deceptiveness of a defendant's representations and omissions must be determined in the context in which they are made and in relation to other statements.  The factfinder must: "consider the advertisement in its entirety and not engage in disputatious dissection.  The entire mosaic should be viewed rather than each tile separately."  *Avola v. Louisiana-Pac. Corp.*, No. 11 Civ. 4053 (PKC), 2013 WL 4647535, at *8, n.11 (E.D.N.Y. Aug. 28, 2013) (quoting *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (alterations omitted)); *Wise*, Tr. at 15 (denying motion to dismiss Section 349 consumer class

action by applying the "entire mosaic" standard and determining that a reasonable consumer may be misled by an energy company's statement that its rates are competitive market rates).[18]

A consumer, choosing whether or not to enroll in Viridian's electricity service, would likely be misled into thinking that the rates Defendant charges are less than the cost of traditional energy and are competitive because that is precisely what Viridian uniformly informs consumers. FAC ¶¶ 5-10.  Defendant represents to consumers for example that, "[w]ith Viridian, the choice is simple – consumers are able to lower their energy bills and help the environment," that "Viridian was built on the idea that customers should never have to choose between affordability and sustainability," and that Viridian achieves this savings by offering "competitive rates."  FAC ¶ 5; *see also id*. ("Making the right choice for the environment doesn't have to cost more.  In fact the average Everyday Green customer saves money on energy costs over time."; "Choosing a more responsible energy product shouldn't hurt your budget."; and "How many . . . people would like to save money on their energy while helping the environment?").

It is well settled that misrepresentations and omissions regarding the price of energy can form the basis of claims for deceptiveness under New York's consumer protections laws.  *See, e.g.*, *Wise*, Tr. at 16 ("The plaintiffs also adequately allege that Energy Plus' misstatements are material by alleging that price is the most important consideration for energy consumers."); *Chen*, 2014 WL 7389011, at *4 ("Plaintiffs have plausibly alleged defendant billed them more for electricity and gas than it represented it would bill them, and thereby engaged in 'deceptive'

---

[18] *See also Murray Space Shoe Corp. v. FTC*, 304 F.2d 270, 272 (2d Cir. 1962) ("In deciding whether petitioner's advertising was false and misleading we are not to look to technical interpretation[s] of each phrase but must look to the overall impression these circulars are likely to make on the buying public. And statements susceptible of both a misleading and a truthful interpretation will be construed against the advertiser."  (Citations omitted)); *Ackerman*, 2010 WL 2925955, at *15 (denying motion to dismiss claims under Section 349 and analogous California statutes challenging the health-related marketing on Coca-Cola's VitaminWater because of the "collective effect" of the challenged statements).

conduct."); *Claridge v. N. Am. Power & Gas, LLC*, No. 15 Civ. 1261 (PKC), 2015 WL 5155934, at *5 (S.D.N.Y. Sept. 2, 2015) (reasonable consumers deceived by statement that price would approximate what other ESCOs charged their customers.).

Here, Viridian's misrepresentations and omissions concerning how much its green energy cost compared to traditional "brown" energy are actionable. *F.T.C. v. Amy Travel Serv.*, Inc., 875 F.2d 564 (7th Cir. 1989), in which the Seventh Circuit affirmed a judgment for the FTC, is particularly instructive.[19]  There, the lower court held that the defendants' representation that an air fare would be at the "economy" rate was deceptive where the fare was in fact quite expensive:

> The main consumer complaint about the defendants' pitch was a misunderstanding about the true cost of the vacation package . . . . "the use of the word 'economy' suggested a low cost fare." *FTC v. Amy Travel*, No. 87 C 6776, slip op. at 27 (N.D. Ill. Feb. 10, 1987).  The Y-class airfare, although described as a "full-economy" fare, is actually the highest-priced coach fare available.  This was never disclosed to the purchasers of the vacation passports and the magistrate found this was deceptive.  Only after a prospective traveler had booked a vacation was the true price disclosed.

*Id*. at 569.  Just as in *Amy Travel*, Defendant's central message is that those who switch to Viridian's green energy (a premium product not unlike premium seats on a flight) will pay less than the cost of their traditional "economy" class energy.  Also similar to *Amy Travel*, where consumers did not learn of the flight's true cost until after booking their vacation, consumers don't find out the true cost of Viridian's variable rate energy until after their teaser rates lapse.

Similarly, Viridian's use of the term "competitive" creates the impression that Defendant's rates will be reflective of prevailing market conditions, not two to three times higher than the actual market rate, a falsity that can only be discovered <u>after</u> consumers receive their

---

[19] As noted *supra*, precedent established under the Federal Trade Commission Act is persuasive authority when determining deceptiveness under N.Y. G.B.L. § 349.

variable rate bills.  Courts also hold that misrepresenting that a good is priced at "market rates" is deceptive.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1129 (N.D. Cal. 2008) (holding that "Defendants' . . . misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing LCD at prices born by a free and fair market.").[20]

In fact, two New York courts have recently held that an ESCO's misrepresentation that its rates are competitive is actionable under New York's consumer fraud statutes.  *Wise v. Energy Plus Holdings*, Tr. at 16 ("the allegedly deceptive statements plausible may be read by a reasonable consumer as a representation that Energy Plus' prices are at least relatively comparable . . . to competitors' prices . . . . Given that the plaintiffs have alleged that Energy Plus' rates in fact are two to three times greater and that Energy Plus' rates rise or remain steady during some periods when market prices decline, the plaintiffs have stated a plausible claim that the challenged statements are deceptive."); *Claridge*, 2015 WL 5155934, at *5 (S.D.N.Y. Sept. 2, 2015) ("A reasonable consumer acting reasonably could be deceived into believing that the rates he or she would be charged under the Agreement would approximate . . . what other ESCOs charged their customers.).

In sum, Plaintiffs have sufficiently alleged specific statements and omissions that would likely lead reasonable consumers to believe that Viridian's rates were lower than the rates charged by the traditional utilities and were competitive with those otherwise available in New York's deregulated energy markets.  As such, Defendant's motion should be denied.

---

[20] *See also Banks v. Consumer Home Mortg., Inc.*, No. 01 Civ. 8508 (ILG), 2003 WL 21251584, at *10 (E.D.N.Y. Mar. 28, 2003) (misrepresentations regarding fair market value are deceptive); *Polonetsky v. Better Homes Depot, Inc.*, 712 N.Y.S.2d 801,806 (N.Y. Sup. Ct. 2000) ("[T]he complaints allege deceptive practices in connection with the sale of such services. These include false advertising or misrepresentations that the homes were sold 'at below market rates.'").

2.   Viridian's Representations About its Rates are Not Mere Puffery

Defendant's central message to consumers is that it provides green energy at prices lower than conventional "brown" energy and that its rates are competitive, which is made in the context of encouraging consumers to purchase Viridian's energy, is more than mere puffery.  These are concrete, quantifiable representations intended to (and do) induce consumers into believing that Viridian's energy rates are priced below, and competitively with, those of public utilities. Indeed, Viridian's proposition that it offers green energy at a lower cost than conventional energy is designed to strike the reasonable consumers as a no-brainer.  Who would not want to purchase a renewable resource instead of a non-renewable resource and save money at the same time?  Indeed, no reasonable consumer would expect a company advertising itself as being "built on the idea that customers should never have to choose between affordability and sustainability" to charge prices far in excess of the price of conventional energy, and no reasonable consumer would expect an ESCO's "competitive" rates to be two or three times higher than the wholesale market rate and that those rates would rise when wholesale rates fell.  FAC ¶¶ 5-7.

Yet Viridian attempts to untangle itself from the misrepresentations of facts most material to a decision to switch energy suppliers by contending that its statements about price (which are prominently displayed on its website and marketing material), however false they may be, are non-actionable puffery.  Def.'s Br. at 20-24.  Defendant is incorrect.

Here, there are three reasons why Viridian's statements are not puffery.  First, statements capable of objective measure are not puffery.  *See Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1094-95 (1991) (statement that merger would give shareholders "high value for their shares" could be material, and noting that "such conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading").  Given that Plaintiffs have already presented objective

evidence regarding the disparity between Viridian's rates, the prevailing market rates, and the rates charged by the Mirkins' traditional utility (FAC ¶¶ 46-48) Plaintiffs have demonstrated that Defendant's misrepresentations are actionable. *See Maytag*, 807 F.Supp.2d at 123 ("If a defendant's misrepresentation comes in the form of a positive assertion, then it is likely that defendant will be responsible if it happens to be false.") (citation and alterations omitted).

Second, Viridian knows that its rates are neither less expensive than the cost of conventional energy nor are they competitive (FAC ¶¶ 9, 46-48) and thus its representations to the contrary are not insulated from liability as mere puffery. This is because "[a]lthough opinions are generally not actionable in fraud, the expression of an opinion or prediction which the declarant does not himself believe is a false statement of fact." *Burton v. Iyogi, Inc.*, No. 13 Civ. 6926 (DAB), 2015 WL 4385665, at *8 (S.D.N.Y. Mar. 16, 2015) (quotation marks omitted). "Additionally, where one party has superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement." *Id.* (quotation marks omitted).[21]

Third, under New York law, claims of nonactionability owing to puffery are not amenable to a 12(b)(6) motion. *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) ("A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare, 'Because I appreciate that the

---

[21] *See also Novak v. Kasaks,* 216 F.3d 300, 315 (2d Cir. 2000) (rejecting puffery argument where plaintiffs pled facts to show that statement "that the inventory situation was 'in good shape' or 'under control'" was not true); *In re Bank of Am. Corp. Sec., Derivatives, & ERISA Litig.,* 757 F.Supp.2d 260, 310 (S.D.N.Y. 2010) ("[T]here is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts.' " (*quoting Novak,* 216 F.3d at 315)); *Silverman v. Motorola, Inc.*, No. 07 Civ. 4507 (JBM), 2008 WL 4360648, at *10 (N.D. Ill. Sept. 23, 2008) (statements regarding "strong balance sheet," that Motorola was "upbeat," "confident" were puffery, but statements that the "competitive" products are "on track," "quite on track," or "keyed up," were material if defendants knew that those products were not on track).

[advertising] campaign is just expressing a far-fetched opinion and not making a statement of fact, all viewers must appreciate it as well.'"); *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 182 (S.D.N.Y. 2003) ("Whether the opinion or soft information is indeed actionable depends on all relevant circumstances of the particular case and is generally not an appropriate basis on which to dismiss a complaint at this stage of the action.").

In fact, this case is strikingly similar to *Wise*.  Tr. at 15-16.  As here, the *Wise* plaintiff alleged that Energy Plus, made material misstatements and omissions about its rates. Specifically, the *Wise* plaintiff alleged that Energy Plus misrepresented to consumers that its energy rates were "competitive" when its customers in fact paid well above market prices.  *Id*. The plaintiff also alleged that Energy Plus fraudulently failed to inform its customers that its rates were above market.  *Id*.  In its motion to dismiss, Energy Plus argued, as Viridian does here, that it was puffery to describe its rates as "competitive."  In rejecting the ESCOs argument Judge Pauley first noted that under New York law "whether defendants' conduct was deceptive or misleading is a question of fact" (quoting *Sims v. First Consumers National Bank*, 303 A.D.2d 288, 289 (1st Dep't 2003), and then refused to accept Energy Plus' attempt to recast its marketing campaign as puffery, holding that the plaintiff had alleged a violation of both N.Y. G.B.L. §§ 349-d(3) and 349 for Energy Plus' "competitive" claims because "plaintiffs have alleged that Energy Plus' rates in fact are two to three times greater and that Energy Plus' rates rise or remain steady during some periods when market prices decline. . . ."  *Wise*, Tr. at 15-16.

Viridian, however, completely ignores this part of *Wise*.  Rather, Viridian primarily relies on non-New York cases against energy suppliers that are readily distinguished.  For example, none of Viridian's cases involve an ESCO hyping green energy as less expensive than conventional energy – a highly specific, quantifiable claim that the FAC demonstrates is false.

*Urbino v. Ambit Energy Holdings, LLC*, No. 14 Civ. 5184 (MAS), 2015 WL 4510201 (D.N.J.

July 24, 2015) (claims brought by a consumer of conventional energy); *Slack v. Suburban*

*Propane Partners, L.P.*, No. 10 Civ. 2548 (JLL), 2010 WL 3810870, at *5 (D.N.J. Sept. 21,

2010) (same); *Daniyan v. Viridian Energy LLC*, No. 14 Civ. 2715 (GLR), 2015 WL 4031752, at

*1 (D. Md. June 30, 2015) (same).  Further, none of the plaintiffs in Viridian's cases provided

evidence that the energy supplier's "competitive rates" were several times the underlying market

rate and that the company's rates rose when market prices decline.  *See* FAC ¶ 46-48 (providing

evidence that Virdian's rates were more expensive than Plaintiffs' utility and that those rates

exceeded the underlying market rate by up to 384.43%).  The case that that did was *Wise.*

The other cases cited by Defendant are also not on point because they involve classic

puffery, not concrete and verifiable claims.  *See Cook, Perkiss & Liehe, Inc. v. N. California*

*Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (finding that the statement "we're the

low cost commercial collection experts" implied an "exaggerated claim that defendants' costs are

lower than any competing attorney's."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,

No. 08 Civ. 04397 (WHA), 2008 WL 6742224, at *3 (N.D. Cal. Dec. 18, 2008) (when taken in

their context, "claims a 'unique capability' to help maintain 'compatibility,'" were not actionable

when accompanied by language that "also says that users of the product will 'win business' and

'save time' while avoiding plaintiff's 'expensive' product.").[22] [23]

---

[22] Notably, the *Autodesk* court found actionable the claims that "users can 'work easily with DWG files created by any version of AutoCAD software' or 'open, edit, and share DWG data,'" because like here, those claims "could be tested."  *Id.*

[23] *Symbol Techs., Inc. v. Janam Techs. LLC*, is also off base as it did not engage in a puffery analysis, and ruled in a patent infringement case that claiming a product was "less expensive than comparable products—does not adequately evidence price erosion." 729 F. Supp. 2d 646, 664 (D. Del. 2010).

Finally, the Court should reject Viridian's attempt to confuse the issues by contending that in order to show that Viridian's rates are not competitive Plaintiffs need to identify the rates charged by Viridian's peers "in the clean energy market." Def.'s Br. at 23-24. Viridian's main competitors are sellers of traditional energy, whose customers Viridian attempts to siphon off via its deceptive marketing – a fact demonstrated by the documents attached to the FAC. *See, e.g.*, FAC ¶ 5 ("Our Mission: Viridian was built on the idea that customers should never have to choose between affordability and sustainability.). As such, the FAC's reference to the utility's rates as well as those of the underlying wholesale market (which Viridian's contract misleadingly states is the basis for its variable rates) are sufficiently detailed to show that Viridian's concrete comparative statements are deceptive.[24]

### 3. The Fine Print on Viridian's Affordable Energy Brochure and in its Contract Does Not Cure Viridian's Misrepresentations

Viridian next contends that certain of its vague and inconspicuous fine print disclaims the Company's misrepresentations. Def.'s Br. at 24-25. But a New York court ruling on a similar consumer protection action against an ESCO recently noted that courts "have concluded that disclaimers alone are insufficient to dismiss a section 349 claim at the pleading stage." *Claridge*, 2015 WL 5155934 (citing *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326–27 (2002)

---

[24] Viridian also contends that the merger clause in its contract supersedes Viridian's deceptive claims about the cost of its energy. Def.'s Br. at 20-21. New York courts, however, have uniformly held that such clauses do not sanitize deceptive marketing. *See Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 215 (2010) ("While the Subscriber Agreement also disclaims the existence of oral or written agreements between the parties other than those contained in that agreement, this general merger clause does not limit the inquiry in a cause of action under General Business Law § 349, since such a claim is "based on deceptive business *practices,* not on deceptive contracts" (quoting *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 345 (1999)) (emphasis in original); *see also DeAngelis v. Timberpeg E., Inc.,* 51 A.D.3d 1175, 1178 (2008) (same). None of Viridian's cases address claims under N.Y. G.B.L. § 349. *Airport Mart, Inc. v. Westchester Cty., N.Y.*, 20 N.Y.S.3d 291 (N.Y. Sup. Ct. 2015) (common law misrepresentation); *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 310 (E.D.N.Y. 2013) (fraudulent inducement); *Urbino*, 2015 WL 4510201, at *4 (New Jersey Consumer Fraud Act).

(disclaimers "do not establish a defense as a matter of law."); *see also Richards v. Direct Energy Servs., LLC*, No. 14 Civ. 1724 (VAB), 2015 WL 4644609, at *8 (D. Conn. Aug. 4, 2015) (noting whether the an energy company's variable rate plan marketing was "an unfair or deceptive market practice is a question of fact that is not readily susceptible to resolution on a motion to dismiss.") (quoting *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284 (D. Conn. 2015)).

That Viridian now blows up its fine print in its brief "does not inherently provide a shield for liability for the deception" of its marketing. *Lynch v. Tropicana Products, Inc.*, No. 11 Civ. 07382 (DMC), 2013 WL 2645050, at *7 (D.N.J. June 12, 2013) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).[25]  Indeed, courts routinely reject fine print disclaimers in consumer cases because "factors such as the font size, placement, or emphasis of a disclaimer can be relevant to whether the terms and conditions were in fact fully disclosed." *Delgado*, 2014 WL 4773991, at *8.[26]

---

[25] *See also Delgado v. Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427 (NGG) (RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) ("[T]he mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations on a product or advertisement."); *Ackerman v. Coca–Cola Co.*, No. 09 Civ. 0395 (JG), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [defendant]'s labeling and marketing."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, No. 13 Civ. 3073 (NSR), 2014 WL 1285137, at *5 (S.D.N.Y. Mar. 27, 2014) (where defendant's advertising touted the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the back label did not as a matter of law prevent a reasonable consumer from being misled).

[26] The energy company's cases are not to the contrary.  In *Dimond v. Darden Restaurants, Inc.*, the challenged automatic 18% gratuity policy, which the court noted assessed a gratuity that was within the norm in New York City, was "completely and conspicuously indicated on the menu" and there were no conflicting representations.  No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).  Here, Defendant's fine print was not conspicuous and conflicts with the much more prominent statements in Viridian's marketing materials.  In *Derbaremdiker v. Applebee's Int'l, Inc.*, the terms on the offer were not misleading, and unlike Viridian's fine print, the disclaimer in *Derbaremdiker* "clearly stated, in the same size text as all the other text on the [offer]" that additional terms applied.  No. 12 Civ. 01058 (KAM), 2012 WL 4482057, at *5-6 (E.D.N.Y. Sept. 26, 2012).  In *Sands v. Ticketmaster-New York, Inc.*,

*Footnote continued on next page.*

### 4. Plaintiffs Properly Plead Cognizable Injuries

Viridian argues that even though Plaintiffs paid Viridian $60.28 more than they would have if they switched to Con Ed when their teaser rate lapsed, Plaintiffs have nevertheless failed to plead an injury.  Def.'s Br. 26-30.  This is incorrect.  Paragraph 38 of the FAC describes Plaintiffs' injury as follows: "Plaintiffs believed that by signing up with Viridian, they would be charged less than what their traditional utility would have charged."   A court in the Southern District of New York recently held that when a consumer alleges the she would not have switched to the ESCO had the defendant not deceived her into switching "plaintiffs' loss would be the difference between the amount defendant charged them and the amount they would have been charged by [the utility]."  *Yang Chen v. Hiko Energy, LLC*, No. 14 Civ. 1771 (VB), 2014 WL 7389011, at *5 (S.D.N.Y. Dec. 29, 2014).  Plaintiffs allegations here, where the exact amount of the overcharge is alleged, are thus more than sufficient.[27]

Seeking to distract from Plaintiffs' well pled allegations and the applicable case law, Viridian claims that "the difference between the rates charged by Viridian and Con Ed is meaningless" because Plaintiffs provided the rates charged by Con Ed for its conventional energy and not the rates for a "comparable [green energy] product from Con Ed."  Def.'s Br. at

---

the fee plaintiff was challenging as "excessive" (not deceptive) was always disclosed.  207 A.D.2d 687, 687 (1994).  Viridian's reliance on *Lewis v. Hertz Corp.*, is also misplaced, as the Appellate Division made clear that the challenged policies were "fully disclosed prior to acceptance of the automobile by the renter."  181 A.D.2d 493, 494 (1992).  *See also Morrissey v. Nextel Partners, Inc.*, 880 N.Y.S.2d 874, at *8 (Sup. Ct. 2009) (speculating that "*if*" terms were fully disclosed then there might not be actionable harm) (emphasis added); *Ballas v. Virgin Media, Inc.*, 856 N.Y.S.2d 22, at *5 (Sup. Ct. 2007) ("[T]he allegedly deceptive practice was fully revealed and explained to Plaintiff . . . .").  Here, the only information Viridian "fully" revealed was its misleading claims about its energy rates.

[27] *See also Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had she understood 'the true amount of the product,' she 'would not have purchased' it.  Thus, Plaintiff has properly alleged injury."); *Lonner v. Simon Prop. Grp., Inc.*, 57 A.D.3d 100, 111 (2d Dep't 2008) (plaintiff was injured by gift card's $2.50 monthly "dormancy fee" that was not clearly and conspicuously disclosed).

26, n.26.  As articulated *supra*, however, Viridian's contention borders on frivolous because the Company's marketing makes clear that Viridian targets consumers of traditional energy by promising green energy at rates lower than the cost of conventional energy.  *See* FAC ¶ 5 (identifying twelve statements in Viridian's marketing materials and website which repeat Viridian's mantra that its green energy is less expensive than traditional energy).

Viridian also relies on the noncontroversial holding in *Wise* that found injury is not adequately plead without an allegation that an ESCO consumer *believed* they would save money by switching.  Def.'s Br. at 27.  Calling this a "fatal infirmity," Viridian neglects to mention that Judge Pauley granted the *Wise* plaintiffs leave to re-plead to correct this obviously technical flaw.  *Wise*, Tr. 16-17.  Viridian also neglects to cite Paragraph 38 of the FAC which explicitly states that Plaintiffs "believed" that they would save money.[28]

Viridian next contends that because a sales representative spoke with the Mirkins, "Plaintiffs' entire exposure to purported marketing claims came during a face-to-face conversation."  Def.'s Br. at 28.  Yet as Viridian's subsequent footnote promptly demonstrates, Defendant's assertion utterly misconstrues the FAC.  Def.'s Br. at 28-29, n.27 (recognizing that Plaintiffs were shown FAC Exs. 3 & 4).[29]  In fact, Plaintiffs were shown two pieces of marketing material (FAC Exs. 3 & 4) and were later mailed three documents (FAC Exs. 2, 3, 8), two of

---

[28] Viridian's claim that Plaintiffs' cannot plead injury because the Company's deceptive conduct was fully disclosed fails for the same reason that Viridian's fine print does not sanitize its misleading marketing as described *supra* in Section (II)(C)(3).

[29] In fact, and as stated in Footnote 2 *supra*, Viridian provided Plaintiffs with FAC Exhibits 2-4 (marketing material) and 8 (Viridian's contract).  Also noted Footnote 2, is the fact that all of the Viridian marketing material provided to Plaintiffs' reiterate Viridian's core message about its rates and that Plaintiffs base their claims on these documents and not the additional documents annexed to the FAC to demonstrate the uniformity of Viridian's messaging.

which were marketing material.  Because Virdian's marketing material was deceptive, Plaintiffs were misled and later financially harmed.  FAC ¶¶ 38-40, 45.

Finally, the Court should reject Viridian's contention that Plaintiffs cannot base their claims on Viridian's welcome letter (FAC Ex. 2) and brochure (FAC Ex. 3) because those documents were mailed after the Mirkins agreed to switch to Viridian.  Def.'s Br. at 29.  Those documents were provided both before Viridian defaulted Plaintiffs onto a variable rate plan and before Viridian began levying high rates.  FAC ¶¶ 40-41.  Further, the documents were provided while the Mirkins still had the opportunity to rescind their agreement with Viridian.  *See* FAC Ex. 8 (Viridian's contract stating "You have the right to cancel the Agreement . . . within three (3) business days of receiving that Agreement).  Accordingly, Plaintiffs have both adequately pled cognizable injuries and have stated claims under New York's general consumer protection statute (N.Y. G.B.L. § 349) as well as the New York law that was recently enacted in response to widespread abuse in New York's deregulated residential energy markets (N.Y. G.B.L. § 349-d).

**D.  Plaintiffs' Breach of Contract Cause of Action Should Proceed – Count IV**
*(Responding to Def.'s Br. Section III(D)(2) at 32-35)*

Viridian's New York Terms & Conditions state in pertinent part:

> Under Viridian's Variable Price Everyday Green Plan or Pure Green Plan, your price may fluctuate from month-to-month based on wholesale market conditions applicable to the [traditional utility's] service territory.

FAC ¶ 95.  Plaintiffs' FAC alleges that instead of charging prices based on the rates set on New York's wholesale market, which Plaintiffs provide in a table in FAC ¶ 47, Viridian charges rates several multiples over the market rate and Viridian's rates increase even when the market rate goes down.  *Id*. ¶¶ 7, 47.  The FAC also pleads that New York's wholesale energy market reflects the traditional utilities' local supply and demand conditions.  *Id*. ¶ 29.  Thus, the

FAC demonstrates that Viridian's variable energy rates ***are not*** "based on wholesale market conditions" and thus pleads a viable claim for breach of contract.

A complaint for breach of contract under New York law need only allege: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).[30]  The FAC readily meets these requirements.  Plaintiffs entered into contracts with Viridian (FAC ¶ 40); they performed their obligations under the contract (*Id*. ¶ 42); Viridian breached the agreement because its rates are not based on wholesale market conditions (*Id*. ¶ 95); and Plaintiffs and the Class were damaged as a result.  *Id*. ¶ 99.  Nothing more is required.

Focusing only on the breach of contract count itself, Viridian first argues that the FAC pleads no facts supporting a breach claim.  Def.'s Br. at 32-33.  Viridian simply ignores the above-allegations, and its sole focus on the count misses the point.[31]  Each count begins by incorporating by reference each and every allegation contained in the Complaint.  FAC ¶ 91.[32]

Viridian next tries to extricate itself from the binding language of the contract by emphasizing that the contract states that Viridian's rates "may" fluctuate from month to month

---

[30] Plaintiffs agree that New York law applies to their claims for breach of contract and breach of the duty of good faith and fair dealing.  *See* Def.'s Br. at 30-31.

[31] By not moving to dismiss the *Hembling* plaintiffs' New York breach claims currently pending before Your Honor, which state only that "Viridian breached its contractual obligations by failing to set rates in response to market conditions and market related factors," Defendants essentially concede the viability of the Mirkins' contract claims.  *See* Am. Class Action Compl. ¶ 33, *Hembling v. Viridian Energy, Inc.*, No. 15 Civ. 01258 (SRU), ECF No. 32.

[32] Virdian also asserts in a footnote that because Ms. Mirkin's name is on the electricity account, it is only "Ms. Mirkin who had a contractual relationship with Viridian[,]" and "Mr. Mirkin cannot state a breach claim against Viridian."  Def.'s Br. at 32, n.29.  Mr. Mirkin, however, is a third party beneficiary of the contract and can thus assert a claim of breach.  "Where, as here, performance is rendered *directly to the third party,* it is presumed that the contract was for his or her benefit."  *Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.*, 94 A.D.3d 1466, 1468 (2012) (quoting *Drake v. Drake*, 89 A.D.2d 207, 209 (1982)) (quotation marks and alterations omitted).

based on wholesale market conditions.  Def.'s Br. at 33.  Viridian claims that "may" means that in fact Viridian's prices are not necessarily "based on wholesale market conditions" but rather on some other unspecified conditions (thus apparently providing Viridian the leeway to charge excessive rates that go up even when market conditions decline).  Def.'s Br. at 33.  Viridian is incorrect.  The term "may" is addressed to whether or not Viridian's rates "fluctuate" not what will cause them to fluctuate – which the contract expressly defines as "based on wholesale market conditions."  In support of its position, Viridian cites to another phrase in the "Price" box on the left column of the contract's first page, which states only that Viridian's rates "can" fluctuate.  Notably, this language directly undercuts Viridian's reading of the contract because when Viridian states that rates "can" fluctuate it says nothing about the basis for those fluctuations.   Instead, just as when Viridian wrote that its rates "may" fluctuate, Viridian's statement that its rates "can" fluctuate indicates that Viridian's variable rates can change, not that they are based on something other than "wholesale market conditions."

Plaintiffs' reading is supported by two cannons of contract construction.  First courts must read contracts as a whole and "avoid interpretations that render contract provisions meaningless or superfluous."  *In re Lehman Bros. Inc.,* No. 11 Civ. 6053 (KBF), 2012 WL 1995089, at *11 (S.D.N .Y. June 5, 2012).  Viridian's reading renders superfluous the provision that rate fluctuations will be "based on wholesale market conditions."  Second, given that Viridian drafted the contract, Viridian's attempt to create ambiguity (where there isn't) should be resolved in Plaintiffs' favor.  This is because "in cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Jacobson v. Sassower*, 66 N.Y. 2d 991, 993 (1985).

40

Finally, Viridian contends that the *Zahn v. N. Am. Power & Gas, LLC*, case under Illinois law is the most persuasive of the recent ESCO breach of contract cases.  Def.'s Br. at 34-35.  Yet while Viridian accurately recounts that the *Zahn* court ruled that the disputed contract's language contradicted the plaintiff's allegations about what the contract promised, Viridian (unsurprisingly) omits the *Zahn* court's analysis, which plainly shows that *Zahn* is inapposite.  Unlike here, the *Zahn* plaintiff alleged that the contract promised the ESCO's prices would "track Commonwealth Edison's price[.]" No. 14 Civ. 8370 (VMK), 2015 WL 2455125, at *5 (N.D. Ill. May 22, 2015).   The contract in *Zahn*, however, promised a variable price based on "market prices for commodity, transportation, balancing fees, storage charges, [company] fees, profit, line losses plus applicable taxes."  *Id*.  Thus, the *Zahn* court ruled that the plaintiff's claim "does not constitute an allegation that the rate [the ESCO] charge[d] did not vary based on those conditions."  *Id*.  That is not the case here.

By contrast, *Yang Chen v. Hiko Energy, LLC*, which was decided under New York law, demonstrates that Plaintiffs' have plead viable breach claims.  2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014).  In *Chen*, the contract stated that the variable price would "reflect the wholesale cost of electricity (including capacity, energy, balancing, settlement, ancillaries), transmission and distribution charges, and other market-related factors, plus all sales and other applicable taxes, fees, charges or other assessments and HIKO's costs, expenses and margins."  *Id*. at *1.  In ruling on the adequacy of the breach claim, the *Chen* court relied exclusively on the allegation that there was a dramatic difference between the plaintiffs' energy bills and what their traditional utility would have charged.  As the facts of *Chen* clearly show, Plaintiffs' claims here are ***even stronger***.  Here, the contract contains no language suggesting any other baseline than "wholesale market conditions."  And in addition to showing that Viridian charged more than their traditional

utility, Plaintiffs have plead facts showing that when the wholesale market declined, Viridian's

rates increased, thus violating the Company's promise that fluctuations would be "based on

wholesale market conditions."  FAC ¶ 46-47.[33]

### E. Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing – Count V
*(Responding to Def.'s Br. Section III(D)(3) at 35-37)*

Despite the fact that Your Honor has sustained good faith and fair dealing claims against

Viridian in two cases under the laws of Connecticut, Massachusetts, and New Jersey, and that

Viridian has chosen to answer the nationwide breach of good faith and fair dealing claims

asserted against it in a third case assigned to Your Honor, Viridian nevertheless contends here

that Plaintiffs' New York claims should be dismissed.  Def.'s Br. at 35-37.[34]   Viridian again

misses the mark.

Every contract contains an implied covenant of good faith and fair dealing.  *Carvel Corp.*

*v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230 (2d Cir. 1991). "This covenant embraces a

pledge that 'neither party shall do anything which will have the effect of destroying or injuring

the right of the other party to receive the fruits of the contract.'"  *511 West 232nd Owners Corp.*

---

[33] Consistent with Viridian's claim that the Company did not promise that its rates would fluctuate based on wholesale market conditions, Viridian tries to distinguish *Chen* on the grounds that the contract stated that the variable rate "*shall* each month change and reflect the wholesale cost of electricity . . . ."  Def.'s Br. at 34, n.30.  Importantly, the word "shall" played absolutely no part in the *Chen*'s court's analysis; indeed, the word "shall" does not even appear in the opinion.  2014 WL 7389011.  Likewise, the court's analysis in *Claridge*, had nothing to do with the fact the ESCO's contract "*will be*" calculated "to include any market prices for commodity, transportation, balancing fees, storage charges, NORTH AMERICAN POWER fees, profit, line losses plus applicable taxes, and any other charges or fees imposed by the utility or other entity having such authority to impose such charges."  2015 WL 5155934, at *4.  Rather, the *Claridge* court simply found that because the "[a]greement was confusing and ambiguous" whether the ESCO "breached this provision cannot be resolved at the pleading stage."  *Id.* at *6.

[34] *See also Sanborn et al. v. Viridian Energy, Inc.*, No. 14 Civ. 01731 (SRU), ECF No. 63 (sustaining Connecticut and Massachusetts good faith and fair dealing claims); *Steketee v. Viridian Energy, Inc.*, No. 15 Civ. 00585 (SRU), ECF No. 41 (sustaining the same claims under New Jersey law), *Hembling et al. v. Viridian Energy, LLC*, No. 15 Civ. 01258 (CSH), ECF No. 34 (Viridian's answer to nationwide good faith and fair dealing claims).

*v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

When it answered the *Hembling* plaintiffs' dual New York contract and good faith and fair dealing claims Viridian acknowledged that such claims can be simultaneously pled. Nevertheless, changing tacks and ignoring its own breach of contract argument, Viridian now claims that Plaintiffs' dual claims here are impermissibly duplicative (Def.'s Br. at 36).  Viridian (wrongly) asserts that its contract, according to which variable rate must be "based" on "wholesale market conditions," allows Viridian to set any rate it wants.  Def.'s Br. 35.  While Plaintiffs disagree with Viridian's reading, if it were adopted by the Court, Viridian's variable rates practices would not violate an express contractual provision.  When no express contractual provision is violated, and, as a result, a breach of contract claim fails, a party can still be found to violate the duty of good faith.  *Chase Manhattan Bank, N.A. v. Keystone Distributors Inc.*, 873 F. Supp. 808, 816 (S.D.N.Y 1994) ("A party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.").

Because Viridian contests the viability of Plaintiffs' contract claim, the Court should allow Plaintiffs to alternatively maintain the good faith and fair dealing claim, which is routinely allowed by New York courts.  *See, e.g.*, *E\*Trade Financial Corp. v. Deutsche Bank AG*, 05 Civ. 0902 (RWS), 2008 WL 2428225, \*26 (S.D.N.Y Jun. 13, 2008) ("Here, because the meaning of the parties' contract has yet to be determined, it is too soon to address whether the plaintiffs' claim of breach of the covenant of good faith and fair dealing is duplicative.").

Importantly, Viridian's papers fail to mention that *Claridge*, which it tried to distinguish for the breach of contract claim, stands squarely for the proposition that a plaintiff is allowed to

plead breach of contract and good faith and fair dealing claims together.  In *Claridge*, after

sustaining the contract claim the court ruled as follows:

> According to the Complaint, [the ESCO] violated the covenant [of good faith and
> fair dealing] by exercising its discretion in bad faith and in a manner inconsistent
> with customers' reasonable expectations. . . . Given the ambiguous language of
> the Agreement, the plaintiffs plausibly allege that [the energy provider defendant]
> could have exercised its discretion in a manner contrary to customers'
> expectations."

2015 WL 5155934, at *6 (citations omitted).

Also contrary to Viridian's assertion, Plaintiffs' contract and good faith and fair dealing

claims are based on different (although to some degree overlapping) facts.  As to breach of

contract, Plaintiffs allege that Viridian's rates are not based on "wholesale market conditions"

because when wholesale market rates go down Viridian's rates go up or stay the same.  FAC ¶

95.  By contrast, for the good faith claim Plaintiffs' allege that Viridian's rates are "exorbitant"

as evidenced by the fact that they are "several multiples" of the wholesale rate.  *Id.* at ¶103.[35]

Viridian's fallback position – that maximizing revenue at customers' expense motivated

primarily, if not entirely, by self-interest, does not support an inference of bad faith – also fails.

Def.'s Br. at 37.  In defending Plaintiffs' breach of contract claim, Viridian argues that it could

essentially set its retail energy rates arbitrarily, increasing customers' prices while wholesale

prices decrease.  Def.'s Br. 33.  In other words, Viridian concedes that it has violated the duty of

good faith and fair dealing by gouging consumers, as such an arbitrary exercise of discretion is

the hallmark of bad faith.  "Where the contract contemplates the exercise of discretion, this

pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."

---

[35] In billing exorbitant rates Viridian also exercises its discretion in a manner contrary to customers'
expectations.  Consumer expectations are shaped by Viridian's marketing that promises competitive rates
and green energy at rates lower than the cost of conventional energy.  *Id.* at ¶ 5.

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995); *see also Carvel Corp. v. Diversified*

*Mgmt. Group, Inc.*, 930 F.2d 228, 232 (2d Cir. 1991) (even if party was given considerable

discretion under contract, party's unreasonable acts breached implied covenant).[36]

  In sum, Viridian's conduct gives rise to an independent claim for breach of the covenant

of good faith and fair dealing, which should not be dismissed at this early pleading stage.


**III.**  **CONCLUSION**

  For all the foregoing reasons, Plaintiffs respectfully requests that Defendant's motion to

dismiss be denied in its entirety.


Dated: February 12, 2016
    Armonk, New York

           By:  /s/ Steven L. Wittels, Esq.
              Steven L. Wittels, Esq.

              Steven L. Wittels, Esq.
              J. Burkett McInturff, Esq.
              Tiasha Palikovic, Esq.
              Wittels Law, P.C.
              18 Half Mile Road
              Armonk, NY 10504
              Phone: (914) 319-9945
              Facsimile: (914) 273-2563
              e-mail: slw@wittelslaw.com
                jbm@wittelslaw.com
                tpalikovic@wittelslaw.com

              ***Lead Counsel for Plaintiffs and the Class***

---

[36] Arbitrary and greed-motivated pricing also betrayed Plaintiffs' expectations that Viridian would provide green energy at competitive prices that were lower than conventional energy, which was the reason Plaintiffs switched to Viridian.  FAC ¶¶ 38-39.

Joseph D. Garrison, Esq.
Garrison, Levin-Epstein,
Richardson, Fitzgerald & Pirrotti, P.C
405 Orange Street, New Haven, CT 06511
Phone: (203) 777-4425
Facsimile: (203) 776-3965
e-mail: jgarrison@garrisonlaw.com

Daniel Hymowitz, Esq.
Andrey Belenky, Esq.
Hymowitz Law Group, PLLC
45 Broadway, 27th Floor
New York, NY 10006
Phone: 212-913-0401
Facsimile: (866) 521-6040
e-mail: daniel@hymowitzlaw.com
        abelenky@hymowitzlaw.com

*Co-Counsel for Plaintiffs and the Class*

46

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically this 12th day of February, 2016. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/  Steven L. Wittels__
Steven L. Wittels